The UNITED STATES of America For the Use of PENSACOLA CONSTRUCTION CO.

v.

ST. PAUL FIRE AND MARINE INSURANCE CO. and John Massman Contracting Company.

Civ. A. No. 88–1604.

United States District Court, W.D. Louisiana, Alexandria Division.

Dec. 13, 1988.

As Amended Jan. 24, 1989.

---

Robert E. Winn, Sessions, Fishman, Rosenson, Boisfontaine & Nathan, New Orleans, La., for Pensacola Const. Co.

Deutsch, Kerrigan & Stiles, Charles F. Seemann, Jr., Matt J. Farley and Bobby M. Harges, New Orleans, La., Leritz, Reinert & Duree, P.C., Bernard A. Reinert, St. Louis, Mo., for St. Paul Fire & Marine Ins. Co.

Pharis & Pharis, Fred A. Pharis, Alexandria, La., for John Massman Contracting, John T. Massman and Carolyn Sue Massman.

## RULING

LITTLE, District Judge.

### I. PROCEDURAL BACKGROUND

The plaintiff subcontractor, Pensacola Construction Co., sued the defendant prime contractor, John Massman Contracting Co., and the defendant surety, St. Paul Fire and Marine Insurance Co., under the Miller Act, 40 U.S.C. §§ 270a *et seq.* The plaintiff alleges that it has performed its contractual duties but has yet to receive compensation. The plaintiff is also claiming that St. Paul is liable for penalties and attorney fees under La.R.S. 22:658. St. Paul has moved to dismiss Pensacola's claims for damages and attorney fees on the grounds that they are not recoverable under the Miller Act.

St. Paul also contends that it is not liable to Pensacola because Pensacola was not a subcontractor but a joint venturer with Massman. St. Paul argues in the alternative that Massman, along with its owners, are liable to St. Paul for any liability it might have to Pensacola because they agreed to indemnify St. Paul for any liability arising out of its suretyship agreement. Massman's owners, John T. and Carolyn Sue Massman, argue that they were not properly served and that this court lacks personal jurisdiction over them.

Massman has moved to stay the proceedings, except for the claim for punitive damages and attorney fees which is not being asserted against it, and to compel Pensacola to arbitrate. Pensacola concedes that arbitration is mandated by the agreement between the parties but argues that its claims against St. Paul should not be stayed. St. Paul does not wish to stay either the arbitration or the judicial proceedings and has moved for a declaratory judgment that any award made by the arbi-

ter is not binding on it. If it is determined that the arbitral decision will have a preclusive effect on the judicial proceeding, St. Paul seeks a stay of any arbitration proceedings that might affect its suit with Pensacola.

## II. MASSMAN'S MOTION TO COMPEL ARBITRATION WITH PENSACOLA

There is no doubt that Massman's motion to compel arbitration must be granted since Pensacola concedes that there is an arbitration agreement between the parties. 9 U.S.C. § 4. Pensacola's suit against Massman must also be stayed. 9 U.S.C. § 3. There is no room for judicial discretion. *United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960) and *I.S. Joseph Co. v. Michigan Sugar Co.*, 803 F.2d 396, 399 (8th Cir.1986).

## III. MASSMAN'S MOTION TO STAY PROCEEDINGS BETWEEN PENSACOLA AND ST. PAUL

■ Although both St. Paul and Pensacola are prepared to run the risk of concurrent proceedings, Massman argues that the litigation should be stayed pending arbitration in order to avoid duplication of efforts and to promote efficiency. As authority for this proposition Massman relies on *United States for the use and benefit of Portland Construction Co. v. Weiss Pollution Control Corp.*, 532 F.2d 1009 (5th Cir.1976). In *Portland Construction Co.*, the subcontractor demanded arbitration with the prime contractor and sued the surety. The Fifth Circuit noted in a perfunctory fashion that a stay was appropriate under the circumstances of the case. We decline to follow *Portland Construction Co.* because the facts of the case at bar are significantly different. The subcontractor in Portland agreed to a stay whereas neither Pensacola nor St. Paul wishes to stay their proceedings.

The Fifth Circuit in *Portland Construction Co.*, moreover, did not explain when stays are appropriate. The analysis that should be employed when granting stays pending arbitration is discussed in a Supreme Court footnote and in a Fifth Circuit footnote. In *Moses H. Cone Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), the Court stated, "In some cases, of course, it may be advisable to stay litigation among the nonarbitrating parties pending the outcome of the arbitration. The decision is one left to the district court ... as a matter of its discretion to control its docket." *Id.* at 20 n. 23, 103 S.Ct. at 939 n. 23. *See also Coastal (Bermuda) Ltd. v. E.W. Saybolt & Co.*, 761 F.2d 198, 203 n. 6 (5th Cir.1985). Judicial economy, however, does not mandate the granting of a stay. Justice Cardozo in *Landis v. North American Co.*, 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153 (1936) wrote:

> [T]he suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else. Only in rare circumstance will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will settle the rights of both.

*Id.* at 255, 57 S.Ct. at 166. *See also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 225, 105 S.Ct. 1238, 1245, 84 L.Ed.2d 158 (1985) (White, J., concurring) ("the heavy presumption should be that the arbitration and the lawsuit will each proceed in its normal course"); *Girard v. Drexel Burnham Lambert, Inc.*, 805 F.2d 607, 611 (5th Cir.1986) ("[l]itigation over non-arbitrable claims can continue even if arbitration proceedings are ongoing"); *GATX Aircraft Corp. v. Courtney Leigh*, 768 F.2d 711, 716 (5th Cir.1985).

Requiring Pensacola to stay its suit against St. Paul would wreak damage on Pensacola and it would subvert the rationale for the Miller Act. Ordinarily a supplier of material or labor can secure a lien or privilege against the improved private property. Government property, however, is not subject to a lien. The surety bond that government contractors must post, 40 U.S.C. § 270a(a), is designed to provide protection to subcontractors such as Pensaco-

la. *See F.D. Rich Co. v. United States for the use of Industrial Lumber Co.,* 417 U.S. 116, 121–22, 94 S.Ct. 2157, 2161, 40 L.Ed.2d 703 (1974). A congressionally mandated remedy should not lightly be interfered with or delayed. Allowing this case to go forward, moreover, would not work a hardship on Massman. Having agreed to arbitrate its claims with Pensacola, Massman may not now complain of duplicative proceedings and the possibility of inconsistent results. *See Moses H. Cone Hospital v. Mercury Construction Corp., supra* (arbitration requires piecemeal litigation and, therefore, does not justify abstention) and *Tai Ping Insurance v. M/V Warschau,* 731 F.2d 1141 (5th Cir.1984). Thus, a stay may not issue because it would not damage Massman but it would hurt Pensacola.

### IV. ST. PAUL'S MOTION FOR DECLARATORY JUDGMENT OR A STAY OF ARBITRATION PROCEEDINGS

A. *The Justiciability of the Declaratory Judgment Motion*

■ St. Paul has moved for a declaratory judgment that the arbitration proceedings between Massman and Pensacola will not have a preclusive effect on the litigation between itself and Pensacola or, in the alternative, for a stay of the arbitration insofar as it purports to affect St. Paul's legal rights. In *Dean Witter Reynolds v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), the Supreme Court made it quite clear that a stay of an arbitration on the grounds that it might have a preclusive effect on a federal litigation was inappropriate: "[T]he Arbitration Act requires district courts to compel arbitration of ... arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of different proceedings in different forums." *Id.* at 217, 105 S.Ct. at 1241. *See also Girard v. Drexel Burnham Lambert, Inc.,* 805 F.2d 607, 611 (5th Cir.1986). The *Dean Witter* court reasoned that a stay was not necessary because "courts may directly ... pro-

tect federal interests by determining the preclusive effect to be given to an arbitration proceeding." *Id.* at 223, 105 S.Ct. at 1243. The *Dean Witter* court, however, did not determine whether a declaratory judgment was an appropriate vehicle by which to test the preclusive effect of an arbitration award. As a threshold matter, therefore, we must consider whether a declaratory judgment ought to be granted in this case. Although the precise issues involved in this case are novel, the governing principles are well established.

Central to the granting of a motion for declaratory judgment lies the issue of whether the disagreement between Pensacola is a concrete controversy or merely an abstract theoretical question. 28 U.S.C. § 2201. In *Maryland Casualty Co. v. Pacific Coal Co.,* 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826, the Supreme Court fashioned the test for resolving this issue:

> The difference between an abstract question and a "controversy" contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

*Id.* at 273, 61 S.Ct. at 512. The cases turn on the practical likelihood of whether the contingency will occur. *See* 10A Wright, Miller & Kane, *Federal Practice and Procedure,* § 2757 (1981). In *Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), the plaintiff was threatened with prosecution under a statute he deemed unconstitutional and the court held that this presented a justiciable controversy. In *Middle South Energy, Inc. v. City of New Orleans,* 800 F.2d 488 (5th Cir. 1986), on the other hand, a utility company sued the city of New Orleans to test whether the city had the right to buy the utility.

The Fifth Circuit held that this did not present an actual controversy because it was too uncertain whether the city actually planned to exercise its contractual right to buy the company. Whether a controversy is a real one hinges on a common sense judgment. There is no doubt on which side of the continuum the case at bar falls. The likelihood that the contingency will occur is, if anything, greater than in *Steffel.* The arbitration will, in all likelihood, finish before this judicial proceeding, and there is no doubt that one of the two parties, either Pensacola or St. Paul, will want to use the results of the arbitration to influence the decision of this court.

■ The resolution of this issue, moreover, will serve the underlying purpose of the Declaratory Judgment Act. The Act was designed to permit a litigant to "avoid accrual of avoidable damages to one not certain of his rights." 6A *Moore's Federal Practice,* § 57.05 (2d ed. 1987) (quoting *E. Edelman & Co. v. Triple-A Specialty Co.,* 88 F.2d 852, 854 (7th Cir.1937), *cert. denied,* 300 U.S. 680, 57 S.Ct. 673, 81 L.Ed. 884). St. Paul is faced with an unhappy choice. If it does not participate in the arbitration, it runs the risk of being precluded from litigating any of the issues presently before us. If, on the other hand, it does agree to arbitrate, it will lose many of the procedural and substantive safeguards [1] that are available to a litigant in a court of law. The loss of procedural rights, moreover, is the kind of damage protected by the Declaratory Judgment Act. *See Allendale Mutual Insurance Co. v. Kaiser Engineers,* 804 F.2d 592,

594–95 (10th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 3185, 96 L.Ed.2d 674.

■ Since a stay of the arbitration may not issue, a declaratory judgment is a particularly appropriate method of resolving the uncertainties that St. Paul is facing. In *Texas Employers' Insurance Association v. Jackson (T.E.I.A.),* 862 F.2d 491 (5th Cir.1988) (en banc), the Fifth Circuit explained that our system of concurrent jurisdiction precludes federal courts from sitting in direct review of state court proceedings. *Id.* at 497–500. *See also Chick Kam Choo v. Exxon,* —— U.S. ——, ———– ——, 108 S.Ct. 1684, 1689–90, 100 L.Ed.2d 127, 135–36 (1988). Thus, a federal court may generally not enjoin an ongoing state court proceeding. *See* 28 U.S.C. § 2283. The constitutional principles that undergird the Anti–Injunction Act bar a declaratory judgment that would effectively decide an ongoing state court proceeding as well. *T.E.I.A.* at 505–06. The *T.E.I.A.* court noted, however, " 'when no state proceeding is pending and thus considerations of equity, comity, and federalism have little vitality, the propriety of granting federal declaratory relief may properly be considered independently of a request for injunctive relief.' " *Id.* at 508 (quoting *Steffel,* 415 U.S. at 462, 94 S.Ct. at 1217). In these circumstances, federalism does not place the same constraints on a declaratory judgment that it does on an injunction: "Congress plainly intended declaratory relief to act as an alternative to the strong medicine of the injunction and to be utilized ... in cases where injunctive relief would be unavailable." *See Steffel,* 415 U.S. at 466, 94 S.Ct. at 1219 and *Perez v. Ledesma,* 401 U.S. 82,

---

1. Perhaps the most important substantive right that a party to arbitration loses is the right to have a decision rendered according to law. An arbiter need not explain his decision and there is little or no review for errors of fact or law. *See United Paperworkers v. Misco,* 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987) (arbitral decisions are largely insulated from judicial review); Motomura, *Arbitration and Collateral Estoppel: Using Preclusion to Shape Procedural Choices,* 63 Tul.L.Rev. 29, 37–45 (1988); and Shell, *Res Judicata and Collateral Estoppel Effects of Commercial Arbitration,* 35 U.C.L.A.L. Rev. 623, 633–635 (1988).

The lack of procedural safeguards was discussed in *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 57–58, 94 S.Ct. 1011, 1024, 30 L.Ed.2d 147 (1974):

[T]he factfinding process in arbitration usually is not equivalent to judicial factfinding. The record of the arbitration proceedings is not as complete; the usual rules of evidence do not apply; and rights and procedures common to civil trials, such as discovery, compulsory process, cross-examination, and testimony under oath, are often severely limited or unavailable.

*See also Wilko v. Swan,* 346 U.S. 427, 435–38, 74 S.Ct. 182, 186–88, 98 L.Ed. 168 (1953).

111–15, 91 S.Ct. 674, 690–92, 27 L.Ed.2d 701 (1971).

Although we are not limited by federalism, the strong federal policy favoring arbitration places similar limits on the federal courts. *See Dean Witter, supra.* A stay is forbidden because it would frustrate the future arbitration proceeding. A declaratory judgment as to the preclusive effects of the arbitration, on the other hand, does not interfere with the arbitration proceedings and it protects the non-arbitrable rights of the parties before this court.

B. *The Merits of the Declaratory Judgment Motion*

Pensacola argues that a surety who has been notified of a suit against his indemnitee and has been given the opportunity to defend the suit is bound thereby. St. Paul acknowledges that Pensacola's position is generally the law with regard to sureties but argues that this general proposition has been modified by *United States Fidelity & Guaranty Co. v. Hendry Corp.*, 391 F.2d 13 (5th Cir.1968), *cert. denied*, 393 U.S. 978, 89 S.Ct. 446, 21 L.Ed.2d 439. In *U.S.F. & G.*, the court held that this general proposition is "inapposite when the plaintiff's recovery depends upon a Miller Act bond." *Id.* at 17. Judge Wisdom noted that suits against a Miller Act surety were restricted to the "United States District Court for any district in which the contract was to be performed and executed and not elsewhere." *Id.* at 16 (quoting 40 U.S.C. § 270b(b)). The court reasoned that this language was designed to protect the Miller Act surety. If a party could sue the surety's indemnitee in state court and then use its preclusive effect against the surety

in federal court, this statutory protection would be rendered nugatory. Thus, the *U.S.F. & G.* court held that the prior state court judgment against the prime contractor would not bind the surety.

█ Pensacola counters *U.S.F. & G.*'s holding by arguing that St. Paul is not barred by the exclusivity provisions of the Miller Act from participating in the arbitration.[2] Pensacola is correct in arguing that St. Paul could *voluntarily* waive the statutory protection afforded it by the Miller Act. *See Texas Construction Co. v. United States for the use of Caldwell Foundry and Machine Co.*, 236 F.2d 138 (5th Cir. 1956) and *United States for the use of Fireman's Fund Insurance Co. v. Frank Briscoe Co.*, 462 F.Supp. 114, 116 (E.D.La. 1978). St. Paul, however, has not made any such waiver. Without such a waiver, this court may not compel St. Paul to change forums, *see United States for the use of Harvey Gulf International Marine, Inc. v. Maryland Casualty Co.*, 573 F.2d 245, 247–48 (5th Cir.1978), nor to arbitrate. *See Del E. Webb Construction v. Richardson Hospital Authority*, 823 F.2d 145, 147, 151 (5th Cir.1987).

█ The parties to this dispute have built their briefs around *U.S.F. & G.* because they have correctly surmised that whether there is privity between St. Paul and Massman is the dispositive issue of this cause. It is black letter law that a judgment may bind a non-party only if he is in "privity" with a party to the litigation:

"Because res judicata denies a non-party his day in court, the due process clause prevents preclusion when the relation-

---

**2.** St. Paul ripostes with the argument that it should not be bound by any judgment between Pensacola and Massman because there is a conflict of interest between St. Paul and Massman and, therefore, the latter may not be trusted to defend St. Paul's interests. St. Paul alleges that Massman ran into financial problems on the multi-million dollar construction project that it agreed to perform for the U.S. Army Corps of Engineers. Massman requested that St. Paul permit assignment of the prime contract to Pensacola, which is owned by John Massman's brother, to avoid default on the prime contract. St. Paul further alleges that there was a "catch"

to this deal. St. Paul had to agree to an open-ended liability and to release the Massmans from their indemnity agreement with St. Paul.

As a general rule, it is true that an indemnitor who has been given notice of an action against his indemnitee is not precluded thereby if there is a conflict of interest between the two. *See Restatement 2nd Judgments*, § 57(2) and Wright, Miller & Cooper, *supra*, §§ 4448–4449. This argument does not help St. Paul, however, because at this stage of the proceedings it is impossible to tell whether St. Paul's allegations of conflict of interest are correct.

ship between the party and the non-party becomes too attenuated."

*Southwest Airlines Co. v. Texas International Airlines,* 546 F.2d 84, 95 (5th Cir. 1977), *cert. denied,* 434 U.S. 832, 98 S.Ct. 117, 54 L.Ed.2d 93. *See also Restatement (Second) of Judgments,* § 34(3) and Reporter's Note, comment a. If St. Paul is correct that it is not in privity with Massman, then the arbitral award would not be admissible even as to the facts found. *See Mackay v. Easton,* 86 U.S. (19 Wall) 619, 632, 22 L.Ed. 211 (1873) and 18 Wright, Miller & Cooper, *supra,* § 4449. If, on the other hand, Pensacola is correct, then the possibility of collateral estoppel exists.[3] The rule of privity that the parties disagree about is the common law practice of vouching into warranty. *See* 18 Wright, Miller & Cooper, *Federal Practice and Procedure,* § 4452 (1981). The early common law lacked modern joinder devices. Thus, the practice developed of allowing a party to notify his indemnitor of the suit and if the indemnitor refused to defend in the proceeding against his indemnitee, the results of the suit were given preclusive effect in a subsequent suit by the indemnitee against his indemnitor.

Although it would seem that there can be no privity between St. Paul and Pensacola under *U.S.F. & G.,* we cannot simply rule in favor of St. Paul, however, because the precedential effect of *U.S.F. & G.,* has been weakened.[4] Two recent Supreme Court opinions make it quite clear that we cannot assume that an arbitral judgment should be given the same preclusive effect as a state court judgment. The issue before us is whether the usual rules of privity hold good with regard to a prior arbitral decision, not a prior state court judgment. In *McDonald v. City of West Branch,* 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984) the court below barred the plaintiff from bringing a section 1983 action on the grounds that it was barred by a previous arbitration. The Supreme Court reversed. The Court reasoned "because federal courts are not required by statute to give res judicata or collateral estoppel effect to an unappealed arbitration award, any rule of preclusion would necessarily be judicially fashioned." *Id.* at 288, 104 S.Ct. at 1802. The Court refused to bar the plaintiff's section 1983 action because some causes of action involve matters of public importance and may only be judicially enforced. The lessons of *McDonald* were driven home by *Dean Witter, supra:*

> We believe that the preclusive effect of arbitration proceedings is significantly less well settled than the lower court opinions might suggest.... [I]t is far from certain that arbitration proceedings will have any preclusive effect on the litigation of non-arbitrable federal claims.... [I]n framing preclusion rules in this context, courts shall take into account the federal interests warranting protection.

470 U.S. at 222–23, 105 S.Ct. at 1243–44. These two cases will guide us on our largely uncharted path as to whether a Miller Act surety may be bound by a prior arbitration in which the surety's indemnitee participated.[5]

---

3. Pensacola would still have to demonstrate that offensive use of collateral estoppel is warranted. *See* note 6, *infra.*

4. Part of *U.S.F. & G.,* moreover, has probably been overruled sub silentio by *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985). The *U.S.F. & G.* court held that when there is exclusive federal jurisdiction, a federal court need not give any credit, let alone full faith and credit, to a state court judgment. 391 F.2d at 18. In *Marrese* the Supreme Court held that the preclusive effect of a state court judgment on a claim that only federal courts could exercise jurisdiction over was indeed subject to the full faith and credit statute, 28 U.S.C. § 1738. 470 U.S. at 380, 105 S.Ct. at 1331–32.

5. Whether St. Paul is in privity with Massman is the threshold issue. If we were to cross that bridge, we would find some cases that deal with the preclusive effect of arbitration on the parties and their privities and which take into account the teachings of *McDonald* and *Dean Witter. See, e.g., Owens v. Texaco, Inc.,* 857 F.2d 262 (5th Cir.1988); *Greenblatt v. Drexel Burnham Lambert, Inc.,* 763 F.2d 1352 (11th Cir.1982); and *Gonzalez v. Southern Pacific Transportation Co.,* 773 F.2d 637 (5th Cir.1985). These cases do not conclusively establish, however, that Pensacola would be entitled to collaterally estop St. Paul. First, we would have to determine the "degree of procedural fairness in the arbitral forum, adequacy of the record with respect to the issue ... and the special competence of the

One case, however, superficially seems to direct us. In *SCAC Transport (USA) v. S.S. Danaos*, 845 F.2d 1157 (2d Cir.1988), suit was brought against a vessel owner and its charterer. The owner and the charterer submitted their dispute to arbitration. The charterer notified its surety of the proceedings but the surety refused to participate. The Second Circuit noted that the common law practice of vouching into warranty was appropriate because arbitration lacks any other devices to join parties. *Id.* at 1161–62. After determining that there was privity between the surety and the charterer, the court reasoned that the arbitral proceeding was sufficiently fair that the third-party plaintiff charterer could collaterally estop the defendant both as to quantum and liability.[6]

In *SCAC Transport* there was no significant federal interest in providing a judicial forum. 845 F.2d at 1163. When the party being vouched into warranty is a Miller Act surety, on the other hand, there is an important federal interest at stake. The jurisdiction and venue requirements of the Miller Act were established in order to protect the surety from the inconsistent results of a multiplicity of lawsuits in different jurisdictions. If the surety were forced to defend his bond in every arbitration proceeding that his indemnitee might be involved in, he would lose the protection that Congress granted the Miller Act surety. The surety would face the possibility of inconsistent results in the different forums and might end up being made liable for more than the amount of the bond. *See U.S.F. & G.*, 391 F.2d 17–18 and *Harvey Gulf International Marine, Inc.*, 573 F.2d at 247–48.[7] In short, the common law prac-

arbitrators." *Gonzalez,* 773 F.2d at 644 (quoting *Gardner–Denver,* 415 U.S. at 60, n. 21, 94 S.Ct. at 1025 n. 21; *Barrentine v. Arkansas–Best Freight System, Inc.,* 450 U.S. 728, 743–44 n. 22, 101 S.Ct. 1437, 1446–47 n. 22, 67 L.Ed.2d 641 (1981); and *McDonald,* 466 U.S. at 292 n. 13, 104 S.Ct. at 1804 n. 13). Second, even if Pensacola convinced us that the arbitral procedure was basically a fair one, it would still have to convince the court that offensive use of collateral estoppel was justified. *See Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 4, 329–31, 99 S.Ct. 645, 649 n. 4, 650–51, 58 L.Ed.2d 552 (1979). *Owens, supra, Greenblatt, supra,* and *Gonzalez, supra,* dealt with defensive use of collateral estoppel. Since an arbitrator need not base his decisions according to law and since his decisions are basically non-reviewable, it is doubtful that offensive use of collateral estoppel would be permissible. *See Standefer v. United States,* 447 U.S. 10, 23 n. 18, 100 S.Ct. 1999, 2007 n. 18, 64 L.Ed.2d 689 (1980) ("[T]he availability of appellate review is [not] always an essential predicate of estoppel. The estoppel doctrine, however, is premised upon an underlying confidence that the result achieved in the initial litigation was substantially correct. In the absence of appellate review, or of similar procedures such confidence is often unwarranted.") *See also, Restatement (Second) of Judgment,* § 28(1). *See generally,* Motomura, *Arbitration and Collateral Estoppel: Using Preclusion to Shape Procedural Choices,* 63 Tul.L.Rev. 29 (1988) (arguing that arbitration should generally not have collateral estoppel effect).

**6.** The *SCAC Transport* case determined that offensive collateral estoppel was permissible under *Parklane Hosiery, supra.* It did not determine, however, whether the arbitral proceeding should be given collateral estoppel effect under *McDonald. See* note 6, *supra.*

**7.** The Ninth Circuit in *United States ex rel Aurora Painting, Inc. v. Fireman Fund's Insurance Co.,* 832 F.2d 1150, 1152 (9th Cir.1987) disagreed with the Fifth Circuit in *U.S.F. & G.* and held that a Miller Act surety who did not participate in an arbitration proceeding against the surety's indemnitee was collaterally estopped once the arbitration award was affirmed by a state court judgment. *Aurora Painting, Inc.,* is inapposite for two reasons. First, the court's holding was based on the Full Faith and Credit Statute, 28 U.S.C. § 1738. An arbitration award that has been affirmed by a state court is entitled to full faith and credit but a naked arbitration award is not. *See McDonald, supra.* Second, the holding of *Aurora Painting, Inc.,* is questionable in light of the Supreme Court's decision in *Marrese, supra.* The Ninth Circuit reasoned that it had to give full faith and credit to a state court judgment even though a claim against a Miller Act surety enjoys exclusive federal jurisdiction. *Aurora Painting, supra* at 1152–53. In *Marrese,* the plaintiff brought suit in state court on purely state law grounds. The plaintiff lost and then brought a claim of exclusive federal jurisdiction against the same defendant based on the same transaction. The issue was whether the second claim was barred by the first. The Supreme Court reasoned that a "state court judgment may in some circumstances have preclusive effect in a subsequent action within the exclusive jurisdiction of the federal courts." 470 U.S. at 380, 105 S.Ct. at 1332. The Court held that if the res judicata law of the state rendering the decision did not have a rule of jurisdictional competency, then the subsequent federal action would be barred.

tice of vouching into warranty must give way before the Miller Act surety's statutory right to have the claims against it litigated in a limited number of judicial forums.

■ *SCAC Transport*, moreover, ignores critical differences between an arbitration proceeding and a judicial one which make it unfair to require an indemnitor to join in an arbitration proceeding when he has never agreed to do so.[8] Due process requires that all conflicts over legal rights and obligations be adjudicated in a court of law. Arbitration is an exception to this rule but it is an exception grounded on the parties' consent. Without consent, arbitration lacks the power to bind either the parties or a court of law in a subsequent proceeding. *See United Steelworkers of America v. Enterprise Wheel and Carriage Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960); *Davis v. Chevy Chase Financial Ltd.*, 667 F.2d 160, 165 (D.C.Cir.1981); and *Restatement 2nd Judgments*, § 84, comment d. If the surety cannot claim the shield of arbitration, then it may not be used as a sword against him.

Not only does the limited jurisdiction with which the arbitration is endowed mandate this result, but also the fact that the ground rules of arbitration lack important procedural safeguards. *See Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 57–58, 94 S.Ct. 1011, 1024–25, 39 L.Ed.2d 147 (1974). A party may choose to give up these protections in order to have a faster and less expensive proceeding but no one should be required to do so. The Supreme Court in *McDonald* and in *Dean Witter* noted that some rights were too important to entrust to arbitration. No right is more basic than the right to have a court of law adjudicate one's disputes. St. Paul never

bargained this right away and we decline to do it for them.

By limiting the preclusive effect of the arbitration proceeding, moreover, the strong federal policy favoring arbitration is furthered. Courts may send cases to arbitration without fear of the preclusive effects that the arbitration might have on the non-arbitrable rights of litigants. *See Dean Witter, supra.* Imposing a rule of jurisdictional competency on the arbitration in order for it to have a preclusive effect means that the parties will get that for which they bargained. Otherwise, an arbiter could go beyond his contractual mandate and the parties would be foreclosed from ever litigating this arrogation of power. Parties would not be as willing to enter into arbitration, if the arbitrator could determine his own jurisdiction. *See A T & T Technologies, Inc. v. Communication Workers of America*, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). In short, the contractual rights of the parties to the arbitration as well as the rights of the litigants in a court of law are equally protected.

## V. ST. PAUL'S MOTION TO DISMISS PENSACOLA'S CLAIMS FOR ATTORNEY FEES AND DAMAGES

■ St. Paul argues that the United States Supreme Court in *F.D. Rich Co., supra*, held that attorney fees were not recoverable under the Miller Act. Pensacola argues that *F.D. Rich Co.*, does not preclude attorney fees when there is a pendent state law claim that authorizes such fees. Pensacola's position has been rendered untenable by *United States for the use and benefit of Howell Crane Service v. U.S. Fidelity & Guaranty Co.*, 861 F.2d 110 (5th Cir.1988). In *Howell Crane Service*, the court reasoned that when no pendent state law claim, except that for attorney fees, was asserted against the Miller

---

**8.** The *SCAC Transport* court noted that consent was not an important factor because a party could be vouched into warranty in a judicial proceeding without its consent. 845 F.2d at 1163. Courts, however, have never required consent, except in a highly artificial sense of the word, to exercise personal jurisdiction over extraterritorial parties. *See, e.g., International*

*Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) and its progeny (the exercise of personal jurisdiction must not offend "traditional notions of fair play and substantial justice"). Arbitration, on the other hand, has always required a free and informed consent. Such consent was lacking in *SCAC Transport* and it is lacking in the case at bar.

Act surety, attorney fees could not be awarded. *Id.* at 112–13. If the instant case had been brought under this court's diversity jurisdiction and Pensacola had asserted an independent state law claim against St. Paul, then Pensacola's claim for attorney fees would have had merit. *See United States for the use of A.C. Garrett v. Midwest Construction Co.*, 619 F.2d 349 (5th Cir.1980). But when the legal relationships between subcontractor and surety are governed solely by the Miller Act, attorney fees may not be granted. See *F.D. Rich, supra* and *Howell Crane Service, supra.*

### VI. JOHN T. AND CAROLYN SUE MASSMAN'S MOTION TO DISMISS FOR LACK OF PROPER SERVICE UNDER FED.R.CIV.P. 4(f) AND FOR LACK OF MINIMUM CONTACTS

The Massmans argue that Fed.R. Civ.P. 4(f) does not provide for extraterritorial service of process. Unfortunately for the Massmans, Fed.R.Civ.P. 4(f) does provide for extraterritorial service of process "when authorized by a statute of the United States or by these rules." The Miller Act provides for nationwide service of process. *See United States v. Congress Construction Co.*, 222 U.S. 199, 203–204, 32 S.Ct. 44, 46, 56 L.Ed. 163 (1911); *Limerick v. T.F. Scholes, Inc.*, 292 F.2d 195, 196 (10th Cir.1961); and *United States as use plaintiff for Pittman Mechanical Contractors, Inc. v. Irvine & Associates, Inc.*, 645 F.Supp. 845 (E.D.Va.1986). Although the Massmans were made parties to the suit via Fed.R.Civ.P. 14 and not directly under the Miller Act, this does not allow them to escape nationwide service of process. *See Limerick, supra.*

The Massmans have also asserted that they do not have sufficient minimum contacts with the State of Louisiana for this court to exercise personal jurisdiction over them. There is no need for there to be any contacts by the Massmans with the forum state, since they have agreed contractually to defend where service is made on an attorney of any court of record. This provision in the contract of indemnifi-cation, moreover, does not suffer from any constitutional infirmities: this is not a contract of adhesion, actual notice of the suit was made, and they have a full opportunity to defend on the merits. *See National Equipment Rental Ltd. v. Szukhent*, 375 U.S. 311, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964); *D.H. Overmeyer Co. v. Frick Co.*, 405 U.S. 174, 92 S.Ct. 775, 31 L.Ed.2d 124 (1972); and *Swarb v. Lennox*, 405 U.S. 191, 92 S.Ct. 767, 31 L.Ed.2d 138 (1972).