The UNITED STATES of America for the use of PENSACOLA CONSTRUCTION CO.

v.

ST. PAUL FIRE AND MARINE INSUR-ANCE COMPANY and John Massman Contracting Company.

Civ. A. No. 88–1604.

United States District Court,
W.D. Louisiana,
Alexandria Division.

March 27, 1989.

Robert E. Winn, Session, Fishman, Rosenson, Boisfontai, New Orleans, La., for Pensacola Const. Co.

Deutsch, Kerrigan & Stiles, Charles F. Seemann, Jr., Matt J. Farley and Bobby M. Harges, New Orleans, La., and Leritz, Reinert & Duree, P.C., Bernard A. Reinert, St. Louis, Mo., for St. Paul Fire & Marine Ins. Co.

Pharis & Pharis, Fred A. Pharis, Alexandria, La., for John Massman Contracting, John T. Massman and Carolyn Sue Massman.

## RULING

LITTLE, District Judge.

## I. PROCEDURAL BACKGROUND

The plaintiff subcontractor, Pensacola Construction Co., sued the defendant prime contractor, John Massman Contracting Company, under the Miller Act, 40 U.S.C. §§ 270a *et seq.* The plaintiff, in its original complaint, alleged that St. Paul owed penalties and attorney fees under La. R.S. 22:658. St. Paul moved to dismiss Pensacola's claims for damages and attorney fees on the grounds that they are not recoverable under the Miller Act. On 13 December 1988, this court ruled in favor of St. Paul, 705 F.Supp. 306. Although the plaintiff's claims under La. R.S. 22:658 were dismissed with prejudice, I noted, in dictum, "if the instant case had been brought under this court's diversity jurisdiction and Pensacola had asserted an independent state law claim against St. Paul, then Pensacola's claims for attorney fees would have had merit. *See United States for use of A.C. Garrett v. Midwest Construction Co.*, 619 F.2d 349 (5th Cir.1980)." Pensacola subsequently amended its complaint to state that diversity jurisdiction existed. St. Paul has now brought a motion to dismiss the amendment on the ground that it fails to state a claim upon which relief may be granted.

Although the present ruling is necessitated by St. Paul's 12(b)(6) motion, we will be forced to reexamine the issues which framed our 13 December ruling. Upon further reflection, the reasoning of the 13 December ruling is questionable but the holding is still good. St. Paul's motion to dismiss is, therefore, GRANTED.

Pensacola's right to recover attorney fees and penalties cannot turn on whether jurisdiction to the claim is pendent to a federal question or whether there is diversity of citizenship between the parties. In either case, a party has the right to assert a state law claim. Pensacola's right to recover hinges on whether La. R.S. 22:658 is pre-empted by the Miller Act or not.

## II. THE MILLER ACT

The Miller Act "establishes the general requirement of a payment bond to protect those who supply labor or materials to a contractor on a federal project. Ordinarily, a supplier of labor or materials on a private construction project can secure a mechanic's lien against the improved property under state law. But a lien cannot attach to Government property, so suppliers on government projects are deprived of their usual security interest. The Miller Act was intended to provide an alternative remedy to protect the rights of these suppliers." *F.D. Rich Co. v. United States for use of Industrial Lumber Co.*, 417 U.S. 116, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974) (citations omitted).

The Miller Act, however, is not concerned solely with protecting contractors. In *United States Fidelity & Guaranty Co. v. Hendry Corp.*, 391 F.2d 13 (5th Cir.1968), *cert. denied*, 393 U.S. 978, 89 S.Ct. 446, 21 L.Ed.2d 439, the court noted that the venue provisions of the Miller Act were designed to protect the surety. *See also United States ex rel Aurora Painting, Inc. v. Fireman Fund's Insurance Co.*, 832 F.2d 1150 (9th Cir.1987). The Miller Act provides:

Every suit instituted under this section shall be brought in the name of the United States for the use of the person suing,

in the United States District Court for any district in which the contract was to be performed and executed and not elsewhere....

40 U.S.C. § 270b(b). By requiring that all suits against the surety be brought solely in the district where the contract was to be performed, Congress evidenced its desire to shield the surety from a multiplicity of suits which might lead to liability in excess of the payment bond. *United States Fidelity & Guaranty Co.*, 391 F.2d at 19 and *Aurora Painting, Inc.*, 832 F.2d at 1152.

### III. PRE-EMPTION

In *Pacific Gas and Electric Co. v. State Energy Resources Conservation & Development Commission*, 461 U.S. 190, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983), the Court noted:

> It is well established that within constitutional limits Congress may pre-empt state authority by so stating in express terms. Absent explicit pre-emptive language, Congress' intent to supersede state law altogether may be found from a " 'scheme of federal regulation ... so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it,' because the Act 'of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject,' or because 'the object sought to be obtained by the federal law and the character of obligations imposed by it may reveal the same purpose.' " Even where Congress has not entirely displaced state regulation in a specific area, state law is pre-empted to the extent that it actually conflicts with federal law. Such a conflict arises when "compliance with both federal and state regulations is a physical impossibility" or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

461 U.S. at 203–204, 103 S.Ct. at 1722 (citations omitted). *See also Silkwood v. Kerr–McGee Corp.*, 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984).

In *K–W Industries, Inc. v. National Surety Corp.*, 855 F.2d 640 (9th Cir.1988), the plaintiff sought compensatory and punitive damages under state law against a Miller Act surety. The defendant argued that the plaintiff's claims were pre-empted by the Miller Act because the state statute conflicted with the objectives of the Miller Act. *Id.* at 642 n. 3. The Ninth Circuit rejected this argument:

> National has pointed to nothing in the Miller Act or in its legislative history to suggest that Congress intended the Act to protect sureties from liability.... We see no conflict whatsoever between Montana's bad faith insurance practices law and the purpose of the Miller Act. Indeed, the Congressional purpose of protecting suppliers of goods and services for federal projects is advanced if sureties are deterred by state tort law from bad faith practices in responding to claims on Miller Act payment bonds.

*Id.* at 643.

The *K–W* court is wrong in its interpretation of the Miller Act—both as to its purpose and as to its pre-emptive sweep. A different panel of the Ninth Circuit reached a very different conclusion as to the objectives of the Miller Act. In *Aurora Painting, Inc.*, 832 F.2d at 1152 (9th Cir.1987), the court stated that Congress desired to "protect the surety from liability beyond the amount of the bond." The pre-emptive scope of the Miller Act was discussed in *F.D. Rich Co.*, 417 U.S. at 127, 94 S.Ct. at 2164. The court reasoned that a uniform national rule was mandated by the Miller Act:

> The Miller Act provides a federal cause of action, and the scope of the remedy as well as the substance of the rights created thereby are matters of federal not state law.

*F.D. Rich Co.*, 417 U.S. at 127, 94 S.Ct. at 2164. It would be illogical for Congress to give exclusive jurisdiction over the Miller Act to federal courts and then expect them to follow state law in interpreting it. *See also United States for use of Howell*

*Crane Service v. United States Fidelity & Guaranty Co.,* 861 F.2d 110 (5th Cir.1988).