**UNITED STATES OF AMERICA FOR THE USE AND BENEFIT OF Dan E. TANNER, P.E., P.L.S. d/b/a Tanner Consulting; and Dan E. Tanner, P.E., P.L.S. d/b/a Tanner Consulting, Plaintiffs,**

v.

**DACO CONSTRUCTION, INC., an Oklahoma corporation; and The Ohio Casualty Insurance Company, an Ohio corporation, Defendants.**

No. 98–CV–0735–EA.

United States District Court,
N.D. Oklahoma.

March 9, 1999.

James Collins Hodges, Eller & Detrich, Tulsa, OK, for Dan E. Tanner, plaintiff.

Robert L. Magrini, Evan Gatewood, Hayes & Magrini, Oklahoma City, OK, for Daco Const., Inc. and Ohio Cas. Ins. Co., defendants.

### ORDER

EAGAN, United States Magistrate Judge.

At issue before the Court is the Defendants' Motion to Stay and Application for Order Directing Parties to Arbitration and Supporting Brief (Docket # 2). This action arises out of a claim by plaintiffs, United States of America for the Use and Benefit of Dan E. Tanner, P.E., P.L.S. d/b/a Tanner Consulting, and Dan E. Tanner, P.E., P.L.S. d/b/a Tanner Consulting (collectively referred to herein as "Tanner"), for payment on a subcontract between Tanner and defendant Daco Construction, Inc. ("Daco"), the primary contractor on a public works construction project that the parties refer to as the "Mingo Creek Project." Defendant Ohio Casualty Insurance Company ("Ohio Casualty") issued a payment bond guaranteeing the payment of all claims for labor and materials on the Mingo Creek Project. Tanner provided surveying services on the Mingo Creek Project, and it seeks payment for those services in the amount of $31,710.30, together with interest, attorneys' fees and costs. Tanner's claims against Daco are equitable claims characterized as *quantum meruit* and unjust enrichment; its claim against Ohio Casualty arises pursuant to the Miller Act.[1]

Defendants initially moved to stay all proceedings and to direct the parties to arbitrate in accordance with the arbitration clauses contained in the prime contract and subcontract. The subcontract contains the language of the Standard Form of Agreement Between Contractor and Subcontractor, 1987 Edition, of the American Institute of Architects ("AIA"). The subcontract provides, in relevant part:

> 6.1 Any controversy or claim between the Contractor and the Subcontractor arising out of or related to this Subcontract, or the breach thereof, shall be settled by arbitration, which shall be conducted in the same manner and under the same procedure as provided in the Prime Contract with respect to claims between the Owner and the Contractor....
>
> ***
>
> 6.5 This Article 6 shall not be deemed a limitation of rights or remedies which the Subcontractor may have under Federal law, under state mechanics' lien laws, or under applicable labor or material payment bonds unless such rights or remedies are expressly waived by the Subcontractor.

(Daco – Tanner Subcontract, attached to Def. Motion to Stay, Docket # 2.)

---

1. *See* 40 U.S.C. § 270a *et seq.* (1994). The Miller Act allows a subcontractor to sue against a payment bond posted by its contractor for nonpayment of services performed on a public works project.

The prime contract between Daco and the U.S. Army Corps of Engineers provides:

Any controversy or Claim arising out of or related to the Contract, or the breach thereof, shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator or arbitrators may be entered in any court having jurisdiction thereof. . . .

(AIA Document A201, "General Conditions of the Contract for Construction," § 4.5.1, attached to Def. Motion to Stay, Docket # 2.) Defendants initially contended that these clauses require the parties to arbitrate pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1–15, and the Oklahoma Uniform Arbitration Act, 15 O.S. § 801, *et seq.* (Def. Motion to Stay, Docket # 2.) Defendants later clarified their position to request that the Court stay the Miller Act claim against Ohio Casualty and compel arbitration of the underlying dispute between Tanner and Daco. (Def. Reply Br., Docket # 6, at 2–3, 5–6; Def.Supp.Br., Docket # 10, at 2–4.)

Tanner objects to defendants' motion. First, Tanner contends that the arbitration clause is unenforceable as to the Miller Act claim because the parties did not agree to arbitrate Miller Act claims and, under Tanner's interpretation of the law, Miller Act claims cannot be arbitrated in the Tenth Circuit. Further, Tanner argues that the Court should not sever the equitable claims and compel arbitration of those claims because they arise from the same set of facts as the Miller Act claim and, "in

fact, represent the same claim." (Pl. Resp.Br., Docket # 3, at 5). Finally, Tanner urges the Court not to stay the Miller Act claim in the event the Court determines to sever the equitable claims and compel arbitration of them.

## I. *The parties did not agree to arbitrate the Miller Act claims*

■ The parties specifically excluded from arbitration any claim under the Miller Act by agreeing to paragraph 6.5 of the subcontract, which excludes, *inter alia,* rights and remedies under federal law. The Miller Act provides Tanner the right to sue in federal court on the payment bond for amounts owed to it by the contractor under the terms of the subcontract. 40 U.S.C. § 270b.[2] Given the language of the subcontract and the fact that Tanner has not expressly waived its right to proceed in federal court, the Court finds that the arbitration clause is unenforceable as to the Miller Act claim and the parties are not compelled to arbitrate the Miller Act claim.

■ The question of whether a Miller Act claim may be arbitrated under Tenth Circuit authority is not before the Court because Tanner did not agree to arbitrate that claim and defendants do not seek to compel arbitration of that claim. However, the Court notes that the Miller Act claim would be arbitrable if the parties had not agreed to paragraph 6.5 in the subcontract or otherwise had expressly agreed to arbitrate the claim. The Court does not read *United States ex rel. B & D Mechanical Contractors, Inc. v. St. Paul Mercury*

---

2. Section 270b provides, in relevant part:

(a) Every person who has furnished labor or material in the prosecution of the work provided for in such contract, in respect of which a payment bond is furnished under sections 270a to 270d–1 of this title and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which such claim is made, shall have the right to sue on such payment bond for

the amount, or the balance thereof, unpaid at the time of institution of such suit and to prosecute said action to final execution and judgment for the sum or sums justly due him. . . .
***
(b) Every suit instituted under this section shall be brought in the name of the United States for the use of the person suing, in the United States District Court for any district in which the contract was to be performed and executed and not elsewhere. . . .

*Ins. Co.*, 70 F.3d 1115 (10th Cir.1995), *cert. denied*, 517 U.S. 1167, 116 S.Ct. 1568, 134 L.Ed.2d 667 (1996), cited by Tanner, to preclude arbitration of statutory claims. In *B & D*, the Tenth Circuit held that a forum selection clause is an invalid waiver of the Miller Act's venue provisions. *Id.* at 1118. It did not hold that an arbitration clause is an invalid waiver of the Miller Act's jurisdictional provisions. In fact, no arbitration clause was at issue. The *B & D* court found that the parties could alter the venue provisions of Miller Act, but they could not change its jurisdictional requirements because the Miller Act grants exclusive jurisdiction to the federal courts. *Id.* at 1117. In other words, if the parties elect to adjudicate a Miller Act claim, they must do so in federal court, as opposed to state court. The case does not preclude the parties from electing to arbitrate instead of electing to litigate.[3]

Similarly, the Court does not read *Shankle v. B–G Maintenance Management of Colorado, Inc.*, 163 F.3d 1230 (10th Cir. 1999), as discussed in Tanner's Supplemental Brief (Docket # 9), to preclude arbitration of Tanner's Miller Act claim. In *Shankle*, an employee sued his employer for race, age and disability discrimination. The Tenth Circuit held an arbitration agreement between the employee and employer unenforceable under the Federal Arbitration Act because the agreement required, as a condition of employee's continued employment, that the employee pay a portion of the arbitrator's fees. The appellate court reasoned that the agreement did not provide for an effective and accessible alternative forum for resolving his claims because the employee could not afford to pay the arbitrator. *Id.* at 1234–35. In this matter, Tanner has not shown that it is unable to pay for arbitration of its equitable claims. Further, a construction contract between two businesses does not present the same policy concerns that may be presented in an employment situation. A construction contract, unlike an employment contract, typically requires that the contractor post a bond to cover performance of the contract and payment of obligations arising under the contract. The subcontractor then has the option to bring suit on the bond, as in this case. Employees have no such option.

Indeed, the argument that Miller claims cannot be arbitrated is foreclosed by several Supreme Court cases holding that, pursuant to the Federal Arbitration Act, statutory claims may be the subject of an enforceable arbitration agreement. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), and cases cited therein. For example, in *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 227–34, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), the Supreme Court held enforceable arbitration agreements relating to claims arising under section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), despite a provision in that statute granting exclusive jurisdiction to federal courts. The *Shearson* court specifically observed that the Federal Arbitration Act establishes a "federal policy favoring arbitration" requiring that courts "rigorously enforce arbitration agreements," and the court remarked that the courts' duty is "not diminished when a party bound by an agreement raises a claim founded on statutory rights." *Id.* at 2337 (citations omitted). The Tenth Circuit has also noted the presumption in favor of arbitrability created by the Federal Arbitration Act, and it has stated that courts must resolve all doubts concerning the scope of arbitrable issues in favor of arbitration. *See Armijo*

---

**3.** Several courts have held that 40 U.S.C. § 270b(b) is not a jurisdictional reference at all, but merely governs venue. *F.D. Rich Co., Inc. v. United States ex rel. Indus. Lumber Co.*, 417 U.S. 116, 124–25, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974); *United States ex rel. Bryant Elec. Co. v. Aetna Cas. & Sur. Co.*, 297 F.2d 665, 669 (2d Cir.1962); *United States ex rel. Expedia, Inc. v. Altex Enterprises, Inc.*, 734 F.Supp. 972, 973 (M.D.Fla.1990); *United States ex rel. Bailey–Lewis–Williams of Florida, Inc. v. Peter Kiewit Sons Co.*, 195 F.Supp. 752, 755 (D.D.C.1961), *aff'd*, 299 F.2d 930 (D.C.Cir.1962).

*v. Prudential Ins. Co.,* 72 F.3d 793, 797–98 (10th Cir.1995); *Coors Brewing Co. v. Molson Breweries,* 51 F.3d 1511, 1514 (10th Cir.1995).

## II. The parties agreed to arbitrate the equitable claims

■ While Tanner's Miller Act claim against the surety is subject to federal law, Tanner's equitable claims against Daco are subject to state law. The law applicable to a federal public works contract is the state law of the place where the contract is executed and to be performed. 40 U.S.C. § 270b(b); *see, e.g., United States ex rel. Aucoin Elec. Supply Co. v. Safeco Ins. Co. of America,* 555 F.2d 535 (5th Cir.1977). Thus, the subcontract at issue in this matter is governed by Oklahoma law.

■ Oklahoma has adopted the Uniform Arbitration Act. Okla.Stat. tit. 15, §§ 801 *et seq.* (1991). The provisions of the Oklahoma act and the Federal Arbitration Act are closely analogous. Both establish the validity of contractual arbitration clauses, and provide that actions involving arbitrable issues shall be stayed pending their resolution by arbitration. 9 U.S.C. §§ 2, 3 (1994); Okla.Stat. tit. 15, §§ 802, 803 (1991); *see Rollings v. Thermodyne Industries, Inc.,* 910 P.2d 1030 (Okla.1996); *Voss v. City of Oklahoma City,* 618 P.2d 925 (Okla.1980). The Oklahoma statute carves out an exception for employment and insurance contracts, Okla.Stat. tit. 15, § 818 (1991), but nothing in the language of statute suggests that it does not apply to public construction contracts.

The parties to the subcontract carved out an exception to arbitration for rights and remedies under federal law, which includes Miller Act claims. That does not change the fact that they agreed to arbitrate the underlying dispute. Paragraph 6.1 of the subcontract requires that any controversy or claim between Daco and Tanner "arising out of or related to this Subcontract, or the breach thereof, shall be settled by arbitration...." Tanner has not shown that it would be substantially prejudiced by being required to abide by its agreement; and it cannot circumvent its contractual obligation to arbitrate by bringing suit on the statutory payment bond.

## III. The Miller Act claim should be stayed pending arbitration of the equitable claims

■ Nor should Tanner be permitted to circumvent its obligation to arbitrate by asking the Court to deny defendants' request to stay the Miller Act claim pending the outcome of the arbitration. The Federal Arbitration Act provides for a stay of court proceedings pending arbitration.[4] Relying primarily upon *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), and *Coors Brewing Co. v. Molson Breweries,* 51 F.3d 1511, 1517 (10th Cir.1995), Tanner argues that no stay is required.[5] In the *Dean Witter* case, the court stated that the Federal Arbitration Act "requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even

**4.** The Federal Arbitration Act provides: "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceedings is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3.

**5.** Tanner also argues that the *Shankle* opinion supports its position because of a footnote that expresses disapproval of the practice of "redlining." 163 F.3d at 1235 n. 6. In the footnote, the Tenth Circuit rejected an argument that it should redline a fee-splitting provision and compel arbitration; the opinion does not require that this Court sever the arbitration clause at issue and strike it from the agreement, as Tanner contends. (See Pl. Supp.Br., Docket # 9, at 5.)

where the result would be the possibly inefficient maintenance of separate proceedings in different forums." 470 U.S. at 217, 105 S.Ct. 1238.[6] The Supreme Court ruled that the district court erred in refusing to grant a motion to compel arbitration of pendent state claims in an action brought by an investor against a securities broker-dealer alleging violations of federal securities law and state law. The broker-dealer in *Dean Witter* moved to compel arbitration of the pendent state claims, but to stay the arbitration pending resolution of the federal action. The *Dean Witter* court noted that "the relevant federal law requires piecemeal resolution when necessary to give effect to an arbitration agreement." *Id.* at 221, 105 S.Ct. 1238 (quoting *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). However, the court refused to decide the preclusive effect, if any, that the arbitration proceeding might have had. The court reasoned that the collateral estoppel effect of an arbitration proceeding is at issue only after arbitration is completed, and the opinion expresses the Supreme Court's confidence in the district courts to determine that preclusive effect. *Id.* at 222–23, 105 S.Ct. 1238.

The Tenth Circuit cited to *Dean Witter* for the proposition that litigation must proceed in a "piecemeal" fashion if the parties intended that some matters, but not others, be arbitrated in the context of a suit alleging antitrust violations. *Coors*, 51 F.3d at 1517. The arbitration clause to which the parties had agreed in *Coors* was broad enough to cover antitrust disputes within the scope of their agreement, and the Tenth Circuit held that the district court did not abuse its discretion in refusing to stay Coors' claim against Molson. The *Coors* court emphasized that staying the litigation is a determination for the trial court to make, based upon considerations of judicial efficiency and control of the court docket, but it recognized that arbitration may proceed "in tandem" with non-arbitrable litigation. *Id.* at 1518 (citing *Armco Steel Co. v. CSX Corp.*, 790 F.Supp. 311, 316 (D.D.C.1991), and *United States for the Use of Pensacola Const. Co. v. St. Paul Fire & Marine Ins. Co.*, 705 F.Supp. 306, 308 (W.D.La.1988)). The *Armco* case, like *Coors*, involved non-arbitrable antitrust claims, but the *Pensacola* case involved Miller Act claims.

The *Pensacola* court reasoned that the subcontractor in that matter should not be forced to stay its suit against the surety because (1) it would subvert the rationale for the Miller Act; and (2) it would work a hardship on the subcontractor but not the contractor. 705 F.Supp. at 308–09. The court noted that a subcontractor on a public works project cannot secure a lien or privilege against government property like a subcontractor involved in a private project. Further, the court stated that the contractor "may not now complain of duplicative proceedings and the possibility of inconsistent results" since the contractor agreed to arbitrate its claims with the subcontractor. *Id.* at 309. In determining the surety's motion for declaratory judgment, the *Pensacola* court held that an arbitration proceeding between the subcontractor and prime contractor would not have a preclusive effect against the surety, for whose protection the jurisdiction and venue requirements of the Miller Act were established, because the surety has a statutory right to have claims against it litigated in federal district court. *Id.* at 313–14.

While the *Pensacola* case is instructive, it is not binding and it ignores a long history of Miller Act cases which resolve the tension between the Miller Act and the Federal Arbitration Act by staying the

---

**6.** The Federal Arbitration Act further provides: "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States District Court which, save for such agreement, would have jurisdiction under Title 28 in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

Miller Act claim pending arbitration of the underlying dispute. *See, e.g., United States ex rel. Newton v. Neumann Caribbean Intern., Ltd.,* 750 F.2d 1422 (9th Cir. 1985); *United States ex rel. Portland Const. Co. v. Weiss Pollution Control Corp.,* 532 F.2d 1009 (5th Cir.1976); *J.S. & H. Const. Co. v. Richmond County Hosp. Authority,* 473 F.2d 212 (5th Cir.1973); *Warren Bros. Co. v. Cardi Corp.,* 471 F.2d 1304 (1st Cir.1973); *United States ex rel. Capolino Sons, Inc. v. Electronic & Missile Facilities, Inc.,* 364 F.2d 705 (2d Cir.), *cert. dismissed,* 385 U.S. 924, 87 S.Ct. 239, 17 L.Ed.2d 148 (1966); *Agostini Bros. Bldg. Corp. v. United States ex rel. Virginia–Carolina Elec. Works,* 142 F.2d 854 (4th Cir.1944); *United States ex rel. Delay & Daniels, Inc. v. American Employers Ins. Co. of Massachusetts,* 290 F.Supp. 139 (D.S.C.1968); *United States ex rel. Chicago Bridge & Iron Co. v. Ets–Hokin Corp.,* 284 F.Supp. 471 (N.D.Cal.1966), *aff'd,* 397 F.2d 935 (9th Cir.1968); *United States ex rel. Seaboard Surety Co., v. Electronic & Missile Facilities, Inc.,* 206 F.Supp. 790 (D.P.R.1962); *Loyal Order of Moose v. International Fidelity Ins. Co.,* 797 P.2d 622 (Alaska 1990).

Whether the outcome of the underlying dispute between Daco and Tanner would be preclusive in a subsequent suit on the bond is not yet at issue before this court. The issue is not well-settled,[7] and it is unclear what the Tenth Circuit would decide if presented with the issue. Nonetheless, one case may provide a clue. In *Fanderlik–Locke Co. v. United States ex rel. Morgan,* 285 F.2d 939 (10th Cir.1960), *cert. denied,* 365 U.S. 860, 81 S.Ct. 826, 5 L.Ed.2d 823 (1961), a subcontractor sued under the Miller Act to recover for extra work it performed, and the general contractor invoked a "disputes clause" in the prime contract with the United States requiring the contracting parties to exhaust certain administrative remedies. The appellate court held that it was not the intention of the parties to the subcontract that the subcontractor be required to comply with the disputes clause in the general contract before the subcontractor could maintain an action under the Miller Act. *Id.* at 942. The court emphasized that the Miller Act was designed for the protection of subcontractors, but the subcontract in that case did not manifest an intent to present the claim for administrative review before judicial review. *Id.* at 942–43.

In this matter, the subcontractor explicitly agreed to arbitrate its claims against the prime contractor (paragraph 6.1), while reserving its right to litigate against the surety (paragraph 6.5). The prudent way to reconcile the inconsistency in the two clauses is to assume that Tanner agreed to arbitrate the underlying dispute against Daco, while reserving its right to sue Ohio Casualty in the event Daco refused to pay an arbitration award in favor of Tanner. Ohio Casualty may then assert, in this Court, any surety defenses it may have, such as notice and demand, statutory or contractual limitations on actions, fraud, overpayment or others. Since Ohio Casualty joined in the motion to compel arbitration, and the same counsel represents both Ohio Casualty and Daco, Ohio Casualty will have the opportunity to participate in the arbitration and assert, in the arbitration, any defenses arising under the contract or its performance.[8] The Court retains jurisdiction to confirm, vacate, correct or otherwise modify the arbitration award, 9 U.S.C. §§ 9, 10, 11, and any preclusive effect can then be

---

**7.** *See generally* J. Michael Franks and John W. Heacock, *Arbitration and the Contract Surety: Inclusion and Preclusion,* 32 Tort & Ins.L.J. 977 (Summer 1997).

**8.** Indeed, Ohio Casualty has a statutory right in Oklahoma to compel Tanner to proceed against Daco. Okla.Stat. tit. 15 § 379 (1991)

("A surety may require his creditor to proceed against the principal, or to pursue any other remedy in his power which the surety cannot himself pursue, and which would lighten his burden; and if in such cases the creditor neglects to do so, the surety is exonerated to the extent to which he is thereby prejudiced.")

determined. Granting a stay in this situation fosters judicial efficiency.

If, on the other hand, the Court were to deny defendants' motion to stay, the arbitration mandate of paragraph 6.1 in the subcontract would be rendered meaningless, and, in every public works project where the subcontractor agrees to a similar clause, the subcontractor could circumvent the arbitration provision by suing the surety. It seems grossly inefficient to have the parties arbitrate and litigate at the same time or bear unnecessary expense and the risk of inconsistent results. While the parties to the subcontract could have made arbitration a condition precedent to an action under the Miller Act, *see United States ex rel Air–Con, Inc. v. Al–Con Development Corp.*, 271 F.2d 904 (4th Cir.1959), in the interests of judicial economy, it is more efficient for Daco and Tanner to arbitrate the underlying dispute before requiring Ohio Casualty to litigate the dispute in federal court.

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Stay and Application for Order Directing Parties to Arbitration and Supporting Brief (Docket # 2) is **GRANTED.** The parties are directed to arbitrate the equitable claims sounding in *quantum meruit* and unjust enrichment, and those claims are stayed pending arbitration. The parties are not directed to arbitrate the Miller Act claim; it is stayed pending arbitration of the equitable claims.