United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 20, 2004**

Charles R. Fulbruge III
Clerk

In the

# United States Court of Appeals
# for the Fifth Circuit

m 03-30872

CITY OF NEW ORLEANS,

Plaintiff-
Counter Defendant-
Appellant,

VERSUS

MUNICIPAL ADMINISTRATIVE SERVICES, INC.,

Defendant-
Counter Claimant-
Appellee.

Appeal from the United States District Court
for the Eastern District of Louisiana

Before SMITH, WIENER, and BENAVIDES,
   Circuit Judges.

JERRY E. SMITH, Circuit Judge:

The City of New Orleans appeals a judgment awarding Municipal Administrative Services, Inc. ("MAS"), the amount due it under a contingency fee contract. Finding no error, we affirm.

I.

MAS[1] entered into a contract with the city to audit BellSouth's royalty payments to the city. The contract provided that in addition to a fixed fee, the city would pay MAS 20% of the amount it recovered from BellSouth. MAS found that BellSouth had incorrectly stated its revenue and owed the city additional royalties. After negotiation and litigation, the city entered into an agreement with BellSouth according to which BellSouth did not admit its liability for the past royalties, but agreed to pay the city $5.5 million per year for five years, and the city agreed to support changes in Louisiana governing law.

The city refused to pay MAS its 20% contingency fee and sued in state court for a declaratory judgment that it did not owe the fee. MAS removed to federal court and filed a counterclaim for the fees, after which the city dropped its claim for declaratory judgment, and both sides acknowledged that MAS would bear the burden of proof of establishing that it was entitled to the fees. The city moved for remand on the basis of a contractual clause by which, the city claimed, MAS had waived its right to removal. The district court denied remand.

After a bench trial, the court entered judgment for MAS, awarding damages and a declaratory judgment that the city must pay MAS a portion of its recovery from BellSouth in future years. The city appeals, arguing that the district court erred in denying its motion to remand, committed clear error in finding that the amount of its settlement with BellSouth constitutes a recovery as a result of MAS's audit within the meaning of its contract, and erred in finding that its contingency fee arrangement did not violate the Louisiana Constitution's prohibition on the donation of public funds.

II.

We review the denial of a motion to remand *de novo*. *Miller v. Diamond Shamrock Co.*, 275 F.3d 414 (5th Cir. 2001). The city filed suit in Orleans Parish Civil District Court (CDC), seeking a declaratory judgment. MAS removed to federal court, alleging diversity of citizenship. The city does not deny that the requirements of 28 U.S.C. § 1332 are met but moved to remand on the basis of a contract clause that the city claims requires litigation exclusively in the CDC.

The clause in question reads as follows:

<u>Jurisdiction</u>
The undersigned Contractor does further hereby consent and yield to the jurisdiction

---

[1] MAS was founded in 1987 by George White, who had been employed in the Franchise Administration Department of the City of Houston, where he had acquired expertise in the field of utility tax franchises. White realized that few people outside city government possessed franchise expertise, and he founded MAS to provide consulting services to municipal governments. MAS provided services to approximately one hundred municipalities, and White had experience auditing Southwestern Bell's franchise fees, resulting in substantial recoveries for other cities.

2

of the State Civil Courts of the Parish of Orleans and does hereby formally waive any pleas of jurisdiction on account of the residence elsewhere of the undersigned Contractor.

The city claims that this clause constitutes not only MAS's consent to jurisdiction in the CDC, but also a waiver of MAS's right to remove to federal court. MAS counters that the clause evinces consent to personal jurisdiction in the Louisiana state courts but does not specify those courts as the exclusive venue for lawsuits arising from the contract, and does not waive MAS's right of removal. The district court agreed with MAS, holding that the clause was not a clear and unequivocal waiver of MAS's removal rights and that any ambiguity should be construed against the city as the drafter of the contract.

For a contractual clause to prevent a party from exercising its right to removal, the clause must give a "clear and unequivocal" waiver of that right. *McDermott Int'l, Inc. v. Lloyds Underwriters*, 944 F.2d 1199 (5th Cir. 1991); *Waters v. Browning-Ferris Indus., Inc.,* 252 F.3d 796 (5th Cir. 2001). A party may waive its rights by explicitly stating that it is doing so, by allowing the other party the right to choose venue, or by establishing an exclusive venue within the contract.

A party's consent to jurisdiction in one forum does not necessarily waive its right to have an action heard in another. For a forum selection clause to be exclusive, it must go beyond establishing that a particular forum will have jurisdiction and must clearly demonstrate the parties' intent to make that jurisdiction exclusive. *Keaty v. Freeport Indonesia, Inc.*, 503 F.2d 955 (5th Cir. 1974). It is important to distinguish between jurisdiction and venue

when interpreting such clauses. Although it is not necessary for such a clause to use the word "venue" or "forum," it must do more than establish that one forum will have jurisdiction.

In *Keaty*, *id.* at 956, the clause in question read, "This agreement shall be construed and enforceable according to the law of the State of New York and the parties submit to the jurisdiction of the courts of New York." The court held that this provision demonstrated consent to be subject to the jurisdiction of the courts of New York, but did not constitute a mandatory forum-selection clause, and was therefore insufficient to constitute a waiver of the right to removal.

The city commends *City of Rose City v. Nutmeg Ins. Co.*, 931 F.2d 12 (5th Cir. 1991), as standing for the proposition that a contractual clause may defeat the right of removal, despite that it does not explicitly use the word "removal" or "venue." Properly understood, however, *Rose City* is inapposite. The clause in *Rose City* stated,

[W]e, at your request agree to submit to the jurisdiction of any Court of Competent jurisdiction withing the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such court.

*Id.* at 14.

The *Rose City* court held that the clause defeated Nutmeg's right to removal because it unambiguously required that Nutmeg "submit to the jurisdiction of any court of the policyholder's choosing." The decision turned not

3

on the use of the word "jurisdiction," and not on venue or forum, but on the contract's giving one party the exclusive right to choose the forum of any proceedings.

The most reliable reading of *Rose City* is that a clause granting one party the right to choose venue must plainly give the party that right. Here, however, there is no indication that MAS gave the city the exclusive right to choose the venue in which the suit would proceed. Rather, as in *Keaty,* one jurisdiction is specified, but neither is any other jurisdiction excluded, nor does MAS consent to something so indefinite as the jurisdiction of the city's choosing. The city's reliance on *Rose City* is unfounded.

The city claims that the clause in this case is sufficiently explicit and unequivocal to constitute waiver of MAS's removal rights. The city maintains that for the clause to have meaning, it cannot be read as merely consenting to personal jurisdiction in the Louisiana courts, because jurisdiction is established by statute in Louisiana, so the clause must therefore establish exclusive jurisdiction. The city further avers that by waiving "pleas of jurisdiction on account of the residence elsewhere of the undersigned Contractor," MAS effectively agreed not to invoke the diversity jurisdiction of the federal courts.

The district court properly rejected this argument. Although such a reading is possible, it is not the only plausible reading of the clause, nor is it the most felicitous. It ignores the chance that, absent the clause, MAS could challenge the exercise of personal jurisdiction by the Louisiana courts.

Although the City attempts to beg the question that personal jurisdiction would exist ab-

sent the clause, it is by no means certain that this assertion would survive a challenge or that the city did not benefit by avoiding any potential litigation expenses it might have incurred had MAS been permitted to challenge personal jurisdiction. Moreover, the city's interpretation ignores the possibility that MAS might have brought suit first and might have done so in a venue where it was not required to plead its citizenship to establish jurisdiction.

The failure of the clause to demonstrate a clear and unequivocal waiver of MAS's removal rights is highlighted by contrast to an effective clause in a different city contract. In *City of New Orleans v. Nat'l Serv. Cleaning Corp.,* 1996 U.S. Dist. LEXIS 10637 (E.D. La. July 24, 1996), the city included the following clause in its contract: "The contractor hereby consents to and stipulates to the personal jurisdiction and venue of the Civil District Court for the Parish of Orleans, Louisiana in any litigation brought under this Article." The court noted the clarity of the clause in specifying that the contractor "consents" and "stipulates" to "personal jurisdiction" and "venue." Here, by contrast, the clause evinces conclusively no more than that MAS consented to jurisdiction and agreed not to raise pleas to jurisdiction.

As the district court noted, the clause is, at the very least, susceptible to more than one reasonable interpretation. This ambiguity must be construed against the city as drafter. The very presence of ambiguity indicates that the clause does not contain a "clear and unambiguous" waiver of removal rights and is therefore ineffective as a waiver. The city's motion to remand was properly denied.

III.

4

The city also cites as error the district court's findings of fact. The contract between the city and MAS required the city to pay MAS 20% of "any amounts recovered" from BellSouth as a result of MAS's audit. The city claims that the money it receives pursuant to its settlement agreement was not an amount "recovered" under the terms of the contracts, and contends that MAS is not entitled to a contingency fee on that amount.

After a bench trial, the district court made findings of fact and conclusions of law, pursuant to FED. R. CIV. P. 52(a). We review findings of fact for clear error. *Alexander v. Cockrell*, 294 F.3d at 628; *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 573 (1985); FED. R. CIV. P. 52(a) ("Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."). We review conclusions of lawSSincluding contractual interpretationsSS*de novo*. *Marquette Transp. Co. v. La. Mach. Co.*, 367 F.3d 398, 402 (5th Cir. 2004).

The district court found that the terms of the contract were unambiguous. Reading the provision that required the city to pay MAS "a contingency fee equal to twenty percent (20%) of any amounts recovered" in light of the contract as a whole, the court found that the settlement with Bellsouth constituted a recovery. It also found that the recovery was a result of MAS's audit, and that therefore MAS was entitled to its 20% contingency fee. The court based this finding on its credibility determinations regarding the testimony of several witnesses regarding the nature of the settlement and MAS's contribution to it. This was not error.

IV.

The city contends that payment of MAS's contingency fee would constitute a donation of public funds in violation of the Louisiana Constitution. The district court held that the fee is not unconstitutional. We review *de novo* the district court's conclusion of law derived from its factual findings. *United States v. Villalobos,* 161 F.3d 285 (5th Cir. 1998).

It is a settled matter of state law that a municipality may agree to a contingency fee. *Town of Mamou v. Fontenot*, 816 So. 2d 958, 966 (La. App. 3d Cir.), *writ denied*, 827 So. 2d 1162 (La. 2002). The City, however, contends that MAS has already been sufficiently compensated and that payment of the contingency fee would constitute an unreasonable bonus. A bonus violates the Louisiana Constitution if not based on services and is an additional payment for duties the party was already contractually obligated to perform and was receiving compensation. *Varnado v. Hosp. Serv. Dist. No. 1*, 730 So. 2d 1066, 1068 (La. App. 1st Cir. 1999).

The district court made factual findings that the contingency fee was not a bonus to MAS but was part of its bargained-for compensation,[2] and that the amount recovered by

---

[2] Apparently, the city did not notice the purported illegality of the 20% contingency fee at the time it entered into the contract. The district court found that at the outset of MAS's audit, BellSouth refused to allow MAS access to its documents and contended that the contingency arrangement was illegal. In response, the city represented that "[t]here is no prohibition of this type of arrangement in Louisiana, nor is it recognized as unfair or a violation of public policy." The city now argues that, given the size of its recovery, a 20% fee would compensate MAS too much for the number
(continued...)

5

the city was a result of the services MAS provided. Considering evidence of the difficulty of the work MAS performed and the expertise that MAS possessed but the city lacked, the court concluded that the fee was not unreasonable and could not, therefore, be characterized as a donation of public funds. In light of these factual findings, the district court's conclusion that the city had no legal basis for refusing to pay MAS in accordance with the contract is fully correct.

AFFIRMED.

---

[2](...continued)
of hours it worked.

In attempting to reduce a contingency fee arrangement to an hourly rate, the city misrepresents the nature of such an arrangement. It ignores the element of risk involved *ex ante* in MAS's agreeing to work for a contingency, and it attempts to make an *ex post* appropriation of the upside of the deal. The city has provided no legal justification for refusing to pay its contingency fee. There is no comparison to customary fees in such situation, nor is there an attempt to discount the resulting fee to the time of the contract, nor an analysis of how the premium MAS would achieve over its normal hourly rate compares to the risk it bore and the expertise it provided.

The sheer magnitude of a fee alone does make it unreasonable or unenforceable. Where an initial percentage is reasonable at the time the contract is formed, the fact that the extent of recovery, and the commensurate contingency fee, are much larger than a party expected at the outset does not invalidate the fee. Rather, it demonstrates that the contract properly constructed incentives such that both parties are even better off than they had anticipated.