**STANLEY SMITH DRYWALL, INC., Plaintiff**

v.

**MUNLAKE CONTRACTORS, INC. and Berkley Regional Insurance Company, Defendants.**

Civil Action No. 5:11–CV–00070–DCB–JMR.

United States District Court, S.D. Mississippi, Western Division.

Aug. 31, 2011.

Jason R. Bush, Baker, Donelson, Bearman, Caldwell & Berkowitz, PC, Jackson, MS, for Plaintiff.

Benjamin Lyle Robinson, Fred L. Banks, Jr., Phelps Dunbar, LLP, Jackson, MS, for Defendants.

## MEMORANDUM OPINION AND ORDER

DAVID BRAMLETTE, District Judge.

This cause comes before the Court on Defendants' Motion to Transfer Venue [docket entry no. 3] and Defendant Berkley's Motion for Stay [docket entry no. 18]. Berkley has subsequently withdrawn its participation in the Motion to Transfer Venue [docket entry no. 17] and has instead moved to stay the Plaintiff's action. [docket entry no. 18]. Having carefully considered the said Motions, the responses thereto, applicable statutory and case law, and being otherwise fully advised in the premises, this Court finds and orders as follows:

## I. FACTS AND PROCEDURAL HISTORY

The Plaintiff is an Alabama corporation authorized to do business in Mississippi. Defendant Munlake Contractors, Inc. ("Munlake") is a Missouri corporation also licensed to conduct business in Mississippi. Defendant Berkley Regional Insurance Company ("Berkley") is a Delaware insurance company, licensed with the Department of Insurance with the State of Mississippi. On or about January 28, 2010, Plaintiff executed a subcontract ("Subcontract") with Munlake to furnish certain work, labor, materials, and equipment for a construction project at Alcorn State University in Claiborne County, Mississippi. This Subcontract included a forum selection clause, designating the courts of Jackson County, Missouri as the proper venue for any legal action arising out of the

contract. As required by Mississippi law, Munlake had previously furnished a payment bond ("Bond") to Alcorn State University, on which Munlake is the principal and Berkely the surety. The terms of the Bond signed by Berkley, and the applicable Mississippi statute governing public bonds, require legal actions arising under the Bond to be brought in the county where the work was located.

The Plaintiff's Complaint [docket entry no. 1] avers that it fulfilled its contractual obligations to Munlake on November 19, 2010 and mailed documentation to that effect along with a request for payment to Berkley on December 21, 2010. On January 18, 2011, Berkley requested additional documentation, which the Plaintiff provided three days later. The Plaintiff never received payment. On March 4, 2011, the Plaintiff notified Berkley of its failure to provide a legitimate reason for its failure to pay and demanded payment from Berkley by March 15, 2011. The Plaintiff, receiving no response, initiated the present suit against Berkley and Munlake in the Circuit Court of Claiborne County, Mississippi. The Complaint alleges that Munlake breached its obligation to the Plaintiff under the Subcontract and that Berkley is obligated under the Bond to pay the Plaintiff for its work on the project.

The Defendants removed the suit to this Court on the basis of diversity jurisdiction. Munlake now moves the Court to transfer venue to the United States District Court for the Western District of Missouri pursuant to the forum selection clause in the Subcontract. The clause states: "venue for any action shall be proper only in the courts of Jackson County, Missouri." See Subcontract ¶ XIV.[1] The Plaintiff does not dispute that this clause is mandatory. Instead, the Plaintiff offers three arguments why the clause is unenforceable: (1) the venue provision in the Bond supercedes the forum selection clause in the Subcontract, (2) enforcement of the forum selection clause would be unreasonable and contravene public policy, and (3) Mississippi law establishes that venue is proper only in Mississippi.[2]

## II. Analysis

### A. Whether the Subcontract's forum selection clause is enforceable

 The federal venue transfer statute states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The party moving to transfer the case bears the burden of demonstrating to the court that transfer of venue is warranted. *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir.1989) (requiring the movant to make a showing that the forum sought is more convenient); *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir.1966). In a motion to transfer venue under § 1404(a), courts consider the following factors:

---

1. It is unclear whether the clause designates Kansas City, Missouri or Jackson County, Missouri as the proper venue. Since Kansas City is, at least in part, in Jackson County and the Plaintiff does not argue that the terms of the Subcontract are ambiguous, this Court accepts the Defendants' conclusion that the named venue is Jackson County. The Subcontract also includes an arbitration clause that provides: "Any disputes arising under this subcontract shall ... be submitted for mediation or arbitration under AAA rules in Kansas City, MO." *See* Subcontract ¶XIV.

2. The pertinent language of the Bond is: "No suit or action shall be commenced by a Claimant under this Bond other than in a court of competent jurisdiction in a location in which the work or part of the work is located...." *See* Bond ¶ 11.

(1) the relative ease of access to sources of proof; (2) the availability of compulsory process, where necessary, over witnesses; (3) the cost of obtaining witnesses for attendance at trial; (4) the possibility of a view of the premises, if appropriate; (5) the enforceability of a judgment; (6) administrative difficulties of the court; (7) the local interest of the controversy, and the imposition of jury duty on citizens residing in the community having no relation to the litigation; (8) the propriety of having the action tried in a forum "at home" with the state law governing the case; (9) the plaintiff's choice of forum; (10) the possibility that trial in the original forum will result in inconvenience, vexation, oppression, or harassment of the defendant; and (11) all other practical problems that make the trial of a case easy, expeditious, and inexpensive.

*Se. Consulting Grp., Inc. v. Maximus, Inc.,* 387 F.Supp.2d 681, 685 (S.D.Miss. 2005) (quoting *First Miss. Corp. v. Thunderbird Energy, Inc.,* 876 F.Supp. 840, 845 (S.D.Miss.1995) (internal quotations omitted)). The presence of a valid forum selection clause, while not dispositive, "is a significant factor that figures centrally in a § 1404(a) analysis." *Se. Consulting,* 387 F.Supp.2d at 685 (quoting *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988)). To put it another way, forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable." *Seattle–First Nat'l v. Manges,* 900 F.2d 795, 799 (5th Cir.1990) (citing *M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 10, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)).

■ In order to decide whether the clause is enforceable, this Court first must determine whether its terms are mandatory or permissive. *Bentley v. Mutual Benefits Corp.,* 237 F.Supp.2d 699, 701 (S.D.Miss.2002) (citing *Caldas & Sons, Inc. v. Willingham,* 17 F.3d 123 (5th Cir.1994)). A mandatory clause must clearly indicate that it is the parties' intent to "expressly limit the forum(s) to the one(s) listed in the contract." *Bentley,* 237 F.Supp.2d at 701; *see also New Orleans v. Mun. Admin. Servs., Inc.,* 376 F.3d 501, 504 (5th Cir. 2004). Typically, words such as "must", "only", or "shall" are indicators of mandatory clauses, *see Bentley,* 237 F.Supp.2d at 701, but the presence of the these words alone does not foreclose the possibility that venue would be permissible in an unnamed locale. *See Willingham,* 17 F.3d at 123 (interpreting the parties' use of "shall" as only consenting to personal jurisdiction). Mandatory forum selection clauses should leave no possibility of alternative interpretations; otherwise, the clause will be construed to permit other venues of adjudication. *Keaty v. Freeport Indonesia, Inc.,* 503 F.2d 955, 957 (5th Cir.1974).

■ The Plaintiff does not argue that the contract's forum selection clause is unclear or ambiguous. The phrase, "shall be proper only" expressly limits venue to the courts of Jackson County, Missouri. Further, enforcement of the clause cannot be said to be unreasonable. It is clear from the handwritten amendments to the Subcontract's forum selection clause that the provision was bargained for by the parties.[3] *See* Subcontract ¶ XIV. In fact, one party, ostensibly the Plaintiff, redacted the original venue, Jackson County, Missouri, and wrote in "Jackson, MS". The other party, in turn, struck out Mississippi, writ-

---

**3.** Judging from the additions and redactions throughout the document, the parties thor-

oughly reviewed and considered its terms.

ing "NO" above it, and reinstated the original terms. The Plaintiff has not alleged that these changes, or the contract generally, was the result of duress, fraud, or mistake. Since the clause is both mandatory and reasonable, a presumption exists that the parties are best served in their contractually agreed-upon forum. *See Se. Consulting,* 387 F.Supp.2d at 685.

■ Proceeding to a 1404(a) factorial analysis, there is no reason why enforcement of the agreement would be inappropriate. The plaintiff argues that it may not be able to secure critical testimony from key non-party witnesses and transfer would negate the possibility of viewing the premises. While these statements may be true, they do not significantly outweigh other factors favoring transfer. Witnesses and evidence exist in Missouri. Should the Plaintiff obtain a judgment against Munlake, it would be able to enforce it in Munlake's place of domicile. There is no evidence to suggest that transfer would unduly inconvenience, vex, or harass the Defendant. Mississippi, while it may have an interest in the enforcement of the Bond, has little interest in seeing a run-of-the-mill contract dispute between a contractor and a subcontractor resolved in its jurisdiction. Finally, and perhaps most importantly, the Plaintiff selected its venue when it signed the Subcontract that included a valid forum selection clause. This Court, therefore, finds that the Subcontract's forum selection clause is mandatory and enforceable.

## B. Whether the Bond's venue provision or Mississippi law overrides the enforceability of the Subcontract's forum selection clause

■ The next question is what effect the Bond's venue provision, and Mississippi law governing public bonds, has on what would otherwise be an enforceable manda-

tory forum selection clause. According to the terms of the Bond, "No suit or action shall be commenced by a Claimant under this Bond other than in a court of competent jurisdiction in the location in which the work or part of the work is located...." *See* Bond ¶ 11. Likewise, Mississippi Code § 31–5–53(c) provides, "Any suit brought on a performance or payment bond given in accordance with this chapter shall be brought in the county in which the contract or some part thereof was performed...." The mandatory language of the Bond, coupled with the underlying Mississippi law, expressly limit suits under the Bond to a location where the work was performed.

As an initial matter, the Subcontract's forum selection clause is not necessarily incompatible with the provisions of the Bond and Mississippi law. It is true that the facts giving rise to both actions significantly overlap, but there are important differences in the two causes of action. First, the relationship between the Plaintiff and Munlake is primarily contractual, whereas Berkely is not a party to the Subcontract and is bound only by the terms of the Bond. *See* Bond ¶ 1. Conversely, the Bond was executed by Munlake, the principal, and Berkely, the surety, and issued to the designated state authority. The Plaintiff did not bargain for any provisions in the Bond, and its claims against the Bond are governed solely by the Bond's terms and Mississippi law. In sum, the Bond's provisions do not dictate the terms of the relationship between the Plaintiff and Munlake, and the Subcontract has little bearing on the relationship between the Plaintiff and Berkely.

To the extent that the Plaintiff's claims against Munlake overlap, this Court relies on its precedent established under the Miller Act, the federal equivalent and precur-

sor to Mississippi's public bond statute, which contains a venue provision similar to Mississippi's.[4] In *In re Fireman's Fund Insurance Companies*, the subcontractor instigated a Miller Act claim against the contractor and its surety in the Eastern District of Louisiana. 588 F.2d 93, 94 (5th Cir.1979). The subcontract, however, mandated that any action arising under the contract be instituted in the County of Essex, State of New Jersey. *Id.* The district court chose to enforce the forum selection clause, despite the Miller Act's conflicting venue provision. *Id.*

On appeal, the Fifth Circuit determined that the Miller Act's venue provision, like other special venue provisions, can be varied by contract. *Id.* at 95 (5th Cir.1979) (citing *Ex parte Collett*, 337 U.S. 55, 72, 69 S.Ct. 944, 93 L.Ed. 1207 (1949); *United States v. Nat'l City Lines*, 337 U.S. 78, 81–82, 69 S.Ct. 955, 93 L.Ed. 1226 (1949)). The court, therefore, concluded that the contractually agreed-upon forum selection clause in the subcontract superseded the statute's venue requirement, and it affirmed the district court's transfer of venue. *In re Fireman's Fund*, 588 F.2d at 95.[5] Similarly, this Court finds that Mississippi Code § 31–5–53(c) does not prohibit parties from agreeing to bring suits in other venues, and where a valid forum selection clause establishes an alternative venue, that clause should be upheld if transfer is appropriate under the requisite 1404(a) analysis. Therefore, neither the Bond's venue provision or Mississippi law alters this Court's conclusion that the forum selection clause should be enforced.

## C. Whether the Plaintiff's action against Berkely should be stayed

A district court has broad discretion to stay cases pending before it, and "[i]n some cases . . . it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 20, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254–255, 57 S.Ct. 163, 81 L.Ed. 153 (1936)). "Where a Court finds that some claims are subject to a forum selection clause and some are not, it should dismiss or transfer the claims that should properly be brought in a contractually agreed-upon forum, but maintain jurisdiction over the others." *Zichichi v. Jefferson Ambulatory Surgery Ctr., LLC*, No. 07–2774, 2007 WL 3353304, at *3 (E.D.La. Nov. 7, 2007).

In order to determine if a stay of the Plaintiff's action against Berkely is appropriate, this Court again looks for guidance from its Miller Act precedent. In *United States for and on behalf of Portland Const. Co. v. Weiss Pollution Control Corporation*, the plaintiff, a subcontractor, initiated an arbitration proceeding pursuant to a valid venue and arbitration agreement in the subcontract, and a few months later brought a Miller Act action against the contractor and the surety in district court. 532 F.2d 1009, 1010–11 (5th Cir.1976). The district court found that the subcontractor, having elected to arbitrate the dispute according to the

---

4. Like its Mississippi progeny, the federal statute provides that: "A civil action brought under [the bond] must be brought . . . in the United States District Court for any district in which the contract was to be performed and executed. . . ." 40 U.S.C. § 3133(b)(3)(B).

5. Other jurisdictions have reached the same conclusion. *See, e.g., United States for Use of Delay & Daniels, Inc. v. Am. Emp. Ins. Co. of Mass.*, 290 F.Supp. 139, 140–41 (D.S.C.1968); *United States for Use and Benefit of Indust. Eng'g & Metal Fabricators, Inc. v. Eric Elevator Corp.*, 214 F.Supp. 947, 948 (D.C.Mass. 1963).

subcontract, could not simultaneously maintain a Miller Act action against the bond's principal and surety. *Id.* at 1111. Further, the district court denied the plaintiff's request for a stay until the arbitration claims were resolved, stating that a stay of the Miller Act proceedings would be "completely unproductive". *Id.*

On appeal, the Fifth Circuit disagreed with the district court's conclusion. Recognizing that the two causes of action were distinct, it determined that ongoing arbitration did not foreclose a potential Miller Act suit against the surety, reasoning:

> What [the subcontractor] is seeking to do is to guard against the possibility that [the contractor] may become insolvent and unable to pay an arbitration award in [its] favor. Should that eventually transpire, unless Portland can maintain its Miller Act suit against the surety, it would be unable to recover.

*Id.* at 1012–13.[6] The Court of Appeals, therefore, held that the district court erred in dismissing the suit and that it should have retained its rightful jurisdiction. *Id.* at 1011 ("No case has been called to the Court's attention holding that a federal court will enforce a clause in a contract expressly denying a subcontractor rights conferred by Congress."). It explained that if the district court wanted to avoid duplicative litigation, a stay of the proceeding against the surety would have been the appropriate course of action. *Id.* at 1013.[7]

*Portland Const. Co.'s* rationale is compelling and applicable to the instant case. Here, Munlake, the defendant, is seeking to transfer the case pursuant to a valid forum selection clause in the Subcontract. It is the Plaintiff that prefers to avoid transfer, and possibly arbitration, by electing to bring his action under the Bond. As stated above, the claims between the Plaintiff and Munlake must be adjudicated according to the terms of the Subcontract, and pursuant to *Portland Const. Co.'s* instruction, this Court must also retain jurisdiction over the Bond. Requiring Berkely to litigate in this Court while the Plaintiff proceeds with the underlying dispute in another court, however, would result in duplicative litigation and create an incentive for Munlake and Berkely to stall litigation in both courts with the hope that one jurisdiction will render judgment first. Further, it would be a waste of judicial resources to allow the parties to litigate similar claims simultaneously. In order to avoid these potentially detrimental effects of concurrent litigation, the Court exercises its broad discretion to stay the proceedings against Berkely pending the resolution of the contract dispute.

Should the Plaintiff prevail in its contract dispute, Berkely may still be liable as surety on the Bond. *See* Bond ¶ 1 ("The Contractor and the Surety, jointly and severely, bind themselves ... to the Owner to pay for labor, materials and equipment furnished for use in the performance of the Construction Contract....."). This Court will not go so far, as suggested by the

---

**6.** The court was careful to note that the doctrine of res judicata would bar the contractor from relitigating any issues decided during arbitration. *Id.* at 1012 n. 3.

**7.** This court recognizes that our sister court declined to follow *Portland Construction Co.'s* precedent, finding that issuing a stay in such circumstance could potentially "wreak damage" to the Plaintiff. *Use of Pensacola Const.*

*Co. v. St. Paul Fire and Marine Ins. Co.,* 705 F.Supp. 306 (W.D.La.1989). The *Pensacola* court's finding, however, deviates not only from Fifth Circuit precedent, but also the general consensus of other jurisdictions. *See United States for the Use and Benefit of Dan E. Tanner v. Daco Construction, Inc.,* 38 F.Supp.2d 1299, 1305 (N.D.Okla.1999).

Plaintiff, to agree in advance to enforce against Berkely any judgment that might be rendered against Munlake. Doing so would deprive Berkely of any defenses to the Bond's execution. This Court will consider any potentially preclusive effects of its litigation against Munlake, should those issues come before it. *See Drill South, Inc. v. International Fidelity Ins. Co.,* 234 F.3d 1232 (11th Cir.2000); *First Mobile Home Corp. v. Little,* 298 So.2d 676 (Miss. 1974).

### III. Conclusion

The Plaintiff, after contractually agreeing to arbitrate in a specific venue, cannot escape that agreement by maintaining that the suit primarily arises under the Bond. On the other hand, the Plaintiff should also not be foreclosed from bringing suit to enforce the payment from the Bond's surety, as provided by the Bond and Mississippi law. This Court, then, agrees with Munlake that the contract's forum selection clause is valid and enforceable and that venue is proper in the courts of Jackson County, Missouri. This Court also agrees with Berkely that the action against it under the Bond should be stayed, pending the resolution of the Plaintiff's contract claims against Munlake. If necessary, the Plaintiff may bring its claim under the Bond in this Court following the termination of the proceedings against Munlake.[8]

Accordingly,

**IT IS HEREBY ORDERED** that the Defendants' Motion to Transfer Venue [docket entry no. 3] is **GRANTED.**

**IT IS FURTHER HEREBY ORDERED** that Defendant Berkley's Motion to Withdraw Motion to Change Venue [docket entry no. 17] is **GRANTED.**

**IT IS FURTHER HEREBY ORDERED** that Defendant Berkley's Motion for Stay [docket entry no. 18] is **GRANTED.**

**IT IS FURTHER HEREBY ORDERED** that the Plaintiff's contract claims against Munlake be **TRANSFERRED** to the United States District Court for the Western District of Missouri.

**IT IS FURTHER HEREBY ORDERED** that the Plaintiff and Defendant Munlake shall notify this Court of the termination of the proceedings in United States District Court for the Western District of Missouri.

---

8. For the record, this Court notes that claims against the Bond must be brought within a year of the action giving rise to the claim.

That statute will be tolled pending the outcome of the contract case. *See* MISS.CODE ANN. § 31–5–53.