The KANSAS CITY SOUTHERN RAILWAY COMPANY, Plaintiff

v.

HANOVER INSURANCE COMPANY, Defendant

CIVIL ACTION NO. 3:15CV161TSL–RHW

United States District Court, S.D. Mississippi, Northern Division.

Signed July 24, 2015

---

Charles E. Ross, Wise, Carter, Child & Caraway, Jackson, MS, for Plaintiff.

Ronald A. Yarbrough, Brunini, Grantham, Grower & Hewes, PLLC, Jackson, MS, for Defendant.

## MEMORANDUM OPINION AND ORDER

Tom S. Lee, United States District Judge

This cause is before the court on the motion of defendant Kansas City Southern

Railway Company (KCSR) to remand pursuant to 28 U.S.C. § 1447. Defendant Hanover Insurance Company (Hanover) has responded in opposition to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion to remand should be granted.

In 2010, KCSR contracted with the City of Vicksburg, Mississippi, to construct a bridge and related support infrastructure. In turn, KCSR, as general contractor, executed a subcontract agreement with Kanza (the Master Agreement) by which Kanza was to perform the majority of the work required by KCSR's contract with the City for the total lump sum price of $6,796,000. Under the terms of the Master Agreement, Kanza was required to provide a performance bond in the amount of $6,796,000. As required, Kanza obtained from Hanover a performance bond (the Bond) naming Kanza as principal and KCSR as obligee in the amount of $6,796,000 for the purpose of securing the performance of the Master Agreement between Kanza and KCSR. The bond provided, *inter alia,* that

> The contractor [Kanza] and the surety [Hanover], jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the owner for the performance of the construction contract, which is incorporated herein by reference.

KCSR filed the present action against Hanover, as surety, in the Circuit Court of Warren County, Mississippi on February 13, 2015, alleging that Kanza (and Hanover, by virtue of its obligations under the bond, and in particular, the above-quoted provision) had breached the Master Agreement by its nonperformance and/or deficient performance of the requirements of that agreement. KCSR demanded recovery from Hanover of expenses totaling $3,576,431.16 which KCSR alleged it incurred in performing work that was Kanza's responsibility under the Master Agreement and in correcting deficiencies in the work that Kanza performed. In addition, KCSR sought punitive damages and attorney's fees for bad faith breach of the performance bond based on Hanover's alleged unreasonable delay in responding to KCSR's claim for costs incurred to fix Kanza's defective work, for its failure to adequately and timely investigate the claim and for its ultimate denial of KCSR's claim on the bond.

Hanover removed the case to this court pursuant to 28 U.S.C. § 1441 on the basis of diversity jurisdiction under 28 U.S.C. § 1332, following which KCSR timely moved to remand. In its motion, KCSR does not deny that the requirements for diversity jurisdiction are satisfied but rather claims that remand is in order as Hanover has waived its right to remove. KCSR points out that Section 17 of the Master Agreement states that "the rights and obligations of the parties are governed by the laws of the state of Mississippi, without regard to any conflict of laws principles," and further provides:

> Except as necessary to enforce indemnity or defense obligations, the parties must bring court proceedings in Mississippi state court located in Warren County, Mississippi.

KCSR argues that since the Bond issued by Hanover incorporates the terms of the Master Agreement, including the Master Agreement's mandatory forum selection clause, then it follows that Hanover has contractually waived its right to remove the case to federal court and the case must be remanded.[1] For the reasons that fol-

---

1. On July 16, 2014, prior to the date KCSR filed its state court complaint in this cause, Hanover filed a complaint against KCSR for declaratory judgment and relief *quia timet. See Hanover v. Kansas City Southern Rwy.,* Civ. Action No. 3:14cv558HTW–LRA

low, the court concludes the motion is well taken.

■■■ While a defendant has a statutory right to remove a case that falls within the federal courts' diversity jurisdiction, *see* 28 U.S.C. § 1441, 1446, "a party may waive its removal rights by contract-even without use of "explicit words, such as 'waiver of right of removal.'" *Collin Cnty., Tex. v. Siemens Bus. Servs., Inc.,* 250 Fed.Appx. 45, 50 (5th Cir.2007) (quoting *Waters v. Browning–Ferris Indus., Inc.,* 252 F.3d 796, 797 (5th Cir.2001)). "'For a contractual clause to prevent a party from exercising its right to removal, the clause must give a "clear and unequivocal" waiver of that right.'" *Ensco Int'l, Inc. v. Certain Underwriters at Lloyd's,* 579 F.3d 442, 443 (5th Cir.2009) (quoting *City of New Orleans v. Mun. Admin. Servs., Inc.,* 376 F.3d 501, 504 (5th Cir. 2004)). "There are three ways in which a party may clearly and unequivocally waive its removal rights: '[1] by explicitly stating that it is doing so, [2] by allowing the other party the right to choose venue, or [3] by establishing an exclusive venue within the contract.'" *Id.* at 443–44 (quoting *City of New Orleans,* 376 F.3d at 504).

■■■ Regarding the third of these potential bases for waiver of removal rights—which is the only basis relevant in this case—the parties to a contract may include a provision that establishes venue in a particular forum in the event of a contract dispute. In order for a forum selection clause to waive a defendant's right to remove, the clause must be "mandatory" rather than "permissive." *See Collin Cnty.,* 250 Fed.Appx. at 51 ("contractual clauses purporting to waive federal jurisdiction must be mandatory and not merely permissive"). A permissive forum selection clause is one that "authorizes jurisdiction and venue in a designated forum, but do[es] not prohibit litigation elsewhere." 14D Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3803.1 (4th ed.2015). In contrast, a forum selection clause is mandatory if it requires that litigation be initiated in a specified forum. *See City of New Orleans v. Mun. Admin. Servs., Inc.,* 376 F.3d 501, 504 (5th Cir. 2004) ("For a forum selection clause to be exclusive, it must go beyond establishing that a particular forum will have jurisdiction and must clearly demonstrate the parties' intent to make that jurisdiction exclusive."); *Bentley v. Mutual Benefits Corp.,* 237 F.Supp.2d 699, 701–02 (S.D.Miss.2002) (mandatory forum selection clause has "express language limiting the action to the courts of a specific locale which is clear, unequivocal and mandatory"). Mandatory forum-selection clauses are enforceable if their language is clear and enforcement is not shown to be unreasonable or unjust under the circumstances. *See M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 12–13, 92 S.Ct. 1907, 1914, 1916–1917, 32 L.Ed.2d 513 (1972); *City of New Orleans,* 376 F.3d at 504.

■■■ The forum selection clause in the Master Agreement in this case states that the parties "must" bring all court proceedings, except as necessary to enforce defense or indemnity obligations, in the "Mississippi state court located in Warren County, Mississippi." Hanover acknowledges that "[t]ypically, words such as 'must', 'only', or 'shall' are indicators of mandatory clauses", *Stanley Smith Drywall, Inc. v. Munlake Contractors, Inc.,* 906 F.Supp.2d 588, 592 (S.D.Miss.2011) (citing *Bentley,* 237 F.Supp.2d at 701); but

---

(S.D.Miss.). In that action, KCSR has moved to dismiss for *forum non conveniens* on the basis of the forum selection clause in the Master Agreement. That motion is currently pending for resolution.

it argues that the forum selection clause cannot be mandatory because it contains an exception for certain claims, i.e., those "necessary to enforce indemnity or defense obligations". Clearly, however, the fact that a forum selection clause excepts some claims from its reach or otherwise does not extend to all potential claims does not mean that it cannot be mandatory as to those claims to which it does apply. Whether a forum selection clause is mandatory and whether it applies to a given claim are separate inquiries. *See Claudio–De Leon v. Sistema Universitario Ana G. Mendez,* 775 F.3d 41, 46 (1st Cir. 2014) (stating that the "threshold question in interpreting a forum selection clause is whether the clause at issue is permissive or mandatory" and "[t]he next step in evaluating the applicability of a forum selection clause is ascertaining its scope"); *Callendar v. Anthes,* Civil Action No. DKC 14–0121, 2014 WL 1577787, at *4–5 (D.Md. 2014) (explaining that court first must establish whether the clause is mandatory, and second "must establish whether the clause is presumptively enforceable against the particular claims in dispute, i.e., whether the claims fall within the scope of the clause"); *Lipson v. Birch,* 46 F.Supp.3d 206, 214 (E.D.N.Y.2014) (holding that party seeking enforcement must show that clause is mandatory and not permissive and that the claims and parties in the suit are subject to the clause). The existence of an exception is relevant to determining the scope of the clause but not to determining whether the clause is mandatory as to those claims to which it applies. *See Marinechance Shipping, Ltd. v. Sebastian,* 143 F.3d 216, 222 (5th Cir.1998) (stating that courts must "look to the language of the parties' contracts to determine which causes of action are governed by the forum selection clauses"); *Harland Clarke Holdings Corp. v. Milken,* 997 F.Supp.2d 561, 575 (W.D.Tex.2014) (undertaking to determine whether specific claims fell within

scope of a mandatory forum selection clause); *Ondova Ltd. Co. v. Manila Indus., Inc.,* 513 F.Supp.2d 762, 772 (N.D.Tex.2007) (as it was undisputed that forum selection clause at issue was mandatory, observing that only issue presented was whether the plaintiff's claim fell within the scope of the forum selection clause).

■ In the case at bar, the forum selection clause in the Master Agreement is unquestionably mandatory as to claims that come within its scope. Indeed, in prior litigation brought by Kanza against KCSR in federal court in Missouri, the court found that Section 17 of the Master Agreement, which unequivocally specifies Warren County Court as the only venue available for all " 'court proceedings' (subject to insurance-related exceptions)" is an unambiguous mandatory forum-selection clause. *Kanza Const., Inc. v. Kansas City Southern Ry. Co.,* 13 F.Supp.3d 985, 989–90 (W.D.Mo.2014). The next question, therefore, is whether it applies to the claims in this case.

Hanover argues that the claims herein fall within the "indemnity" exception in the forum selection clause, making the clause inapplicable. In support of this position, Hanover first notes that "indemnity" has been variously defined as " 'the obligation or duty resting on one person to make good any loss or damage another has incurred by acting at his request or for his benefit.' " *PIC Group, Inc. v. LandCoast Insulation, Inc.,* 795 F.Supp.2d 459, 463 n. 2 (S.D.Miss.2011) (quoting *Lanier at McEver, L.P. v. Planners & Eng'rs Collaborative, Inc.,* 284 Ga. 204, 663 S.E.2d 240, 242 (2008)). *See also* Black's Law Dictionary, 784 (8th ed.2004) (defining indemnity as a "contractual provision in which one party agrees to answer for any specified or unspecified liability or harm that the other party might incur"). Hanover then points to the following indemnity provision set

forth in Section 9 in the Master Agreement:

> KANZA EXPRESSLY AGREES TO INDEMNIFY, DEFEND AND SAVE HARMLESS THE CITY OF VICKSBURG, AND THE COMPANY (KCSR), ITS OFFICERS, AGENTS, SERVANTS AND EMPLOYEES (COLLECTIVELY, THE "INDEMNITEES") FROM AND AGAINST ANY AND ALL CLAIMS, JUDGMENTS AND RECOVERIES FOR ANY LOSS OR DAMAGE TO ANY PROPERTY AND INJURY TO OR DEATH OF ANY PERSONS, HOWSOEVER THE SAME MAY BE CAUSED (WHETHER ARISING OUT OF OR BASED UPON CONTRACT, TORT, STRICT LIABILITY OR OTHERWISE) DIRECTLY OR INDIRECTLY RESULTING FROM OR HAPPENING IN CONNECTION WITH THE WORK COVERED BY THIS AGREEMENT. KANZA ALSO AGREES TO INDEMNIFY, DEFEND AND SAVE HARMLESS THE COMPANY INDEMNITEES FROM ANY LOSS, COSTS AND EXPENSES THAT MAY BE SUFFERED BY IT ON ACCOUNT OF KANZA'S FAILURE TO COMPLY WITH ANY OF THE TERMS AND PROVISIONS OF THIS AGREEMENT.

Focusing on the last sentence of this paragraph, Hanover submits that this suit by KCSR is clearly an action for indemnity as KCSR seeks reimbursement of loss, costs and expenses which it allegedly incurred as a result of Kanza's alleged failure to comply with the terms and provisions of the Master Agreement. Hanover concludes that consequently, this lawsuit falls within the "indemnity" exception to the forum selection clause.

For its part, KCSR contends that Hanover's assertion that the complaint in this case is for indemnity derives from an "overly broad definition of indemnity" as encompassing first-party claims instead of the typical third-party claims. KCSR asserts that the focus of the indemnification provision in the Master Agreement, when considered in toto, is on third-party claims, as evidenced both by the use of the term "defense" each time the term "indemnity" is used and by the inclusion of two additional paragraphs that address, in detail, Kanza's rights to settle or defend third-party claims and KCSR's rights to do so should Kanza fail to take action.

Having considered the parties' arguments, the court is not persuaded that the indemnification provision of the Master Agreement is clearly and unambiguously limited to third-party claims. *Cf. Wal-Mart Stores, Inc. v. Qore, Inc.,* 647 F.3d 237, 243 (5th Cir.2011) (concluding, based on objective reading of provision by which contractor agreed "to indemnify and hold Wal-Mart free and harmless from any claim, demand, loss, damage, or injury (including Attorney's fees) caused by any negligent act or omission by the [contractor]", that there was "nothing unclear or ambiguous" about the provision or that otherwise suggest[ed] it should be limited to third-party claims"). Nevertheless, the court is convinced that Hanover's proffered interpretation of the exception to the forum selection clause as covering KCSR's claims in this cause is not reasonable.

The effect of Hanover's interpretation is to except from the reach of the forum selection clause any claim in which KCSR seeks to recover money damages for a breach of the terms of the Master Agreement. As KCSR notes, under this interpretation, the exception would swallow the rule: Most claims for breach of the construction contract would include a request for damages, and all first-party claims for damages would also be indemnity claims. Read in this manner, the exception to the forum selection clause is far more encom-

passing than the forum selection clause itself. The only claims that would not be covered by the exception would be "such things as lien enforcement, injunctive relief and the like."[2] Claims for injunctive relief are certainly common. However, in practice, few complaints for breach of construction contracts seek only injunctive relief; most also include claims for damages. According to Hanover's construction, the claim for injunctive relief would be subject to the forum selection clause but the claim for damages would not be. The court can fathom no arguable rationale for the difference in treatment of these claims.

Furthermore, and as KCSR aptly points out, the exception, by its terms, applies only "*as necessary* to enforce indemnity or defense obligations." (Emphasis added). In *Armer v. OpenMarket, Inc.*, No. C08–1731RSL, 2010 WL 1433415 (W.D.Wash. Apr. 7, 2010), the court offered a reasonable explanation for the exception: "The parties recognized that they could not control the location of suits initiated by third-parties and therefore authorized Sprint to seek defense and indemnification within the pending suit rather than having to initiate separate litigation in Kansas." *Id.* at *2. Certainly, in this case, if it had been the parties' intention to except from the forum selection clause *any* claim for indemnity, as Hanover contends, they could easily have said as much; they did not. And to interpret the clause in the manner suggested by Hanover is to read out the "except as necessary" language. This, the court may not do. Rather, it must seek to give effect to the whole clause. *See Chembulk Trading LLC v. Chemex Ltd.*, 393 F.3d 550, 555 (5th Cir.2004). ("A basic principle of contract interpretation . . . is

to interpret, to the extent possible, all the terms in a contract without rendering any of them meaningless or superfluous."). In the court's opinion, under the only reasonable interpretation of the subject provision, where it is necessary to bring a claim in a forum other than the state courts of Warren County, Mississippi to enforce a defense or indemnity obligation, the mandatory forum selection clause of the Master Agreement does not apply. In all other cases, "the parties must bring court proceedings in Mississippi state court located in Warren County, Mississippi."

Hanover argues that regardless of whether the forum selection clause in the Master Agreement is mandatory, and regardless of whether the claims herein would fall within the scope of that clause, the Master Agreement's forum selection clause is not binding on Hanover. According to Hanover, while its Performance Bond expressly incorporated the Master Agreement, it was not Hanover's intent to incorporate the Master Agreement's forum selection clause. Rather, the Performance Bond's incorporation of the Master Agreement was for the sole purpose of recognizing the contractual scope of work which Hanover might be bound to complete. In support of its position in this regard, Hanover relies on *Jefferson Parish Consolidated Garbage District No. 1 v. Waste Management of Louisiana, L.L.C.*, Civil Action No. 09–6270, 2010 WL 1731204 (E.D.La. Apr. 28, 2010), and *Employers' Mutual Casualty Co. v. Iberville Parish School Board*, Civil Action No. 12–437–JJB, 2013 WL 943759 (M.D.La. Mar. 11, 2013), in support of its assertion that it is not subject to the forum selection clause in the Master Agreement. Its reliance is not

---

**2.** Even Hanover seems to recognize that under its interpretation, most claims that would be brought for breach of the agreement would fit within the exception rather than the rule. Hanover notes in response to KCSR's motion

that "exceptions (to the exception) that would require suit to be brought only in Warren County" would include "such things as lien enforcement, injunctive relief and the like."

well founded. In *Jefferson Parish*, the plaintiff filed suit in Louisiana state court seeking a declaratory judgment relating to certain provisions of a Collection Contract entered into with Waste Management of Louisiana and Travelers Casualty and Surety Company of America (Travelers) as surety. Following removal by Travelers, the plaintiff moved to remand on the basis of a mandatory forum selection clause in the Collection Contract. While the bond did include language incorporating the underlying Collection Contract, it did not do so without limitation. Rather, as the court explained,

> The performance bond issued by Travelers, which guarantees the underlying Collection Contract in the event that Waste Management fails to perform, states that "[the Collection Contract] is made a part hereof and incorporated herein by reference, *except that nothing said therein shall alter, enlarge, expand or otherwise modify the term of the bond as set out below.*" (emphasis added). As such, although the Collection Contract is incorporated by reference in Travelers' performance bond, the performance bond operates as a guarantee of the underlying collection contract. The Collection Contract obligated Waste Management to collect trash, but if Waste Management failed to perform, Travelers would not then have the same obligation to collect trash; rather, Travelers would have the option of performing Waste Management's duties, paying the "amount of the bond penalty," or paying the amount necessary to cure Waste Managements nonperformance. Any waiver of removal rights that Waste Management may have agreed to in the Collection Contract does not attach to Travelers, and Travelers' removal of this action was therefore proper.

*Id.* at *2. In contrast to the bond provision in *Jefferson Parish*, Hanover's performance bond incorporated the un-

derlying Master Agreement *without any language of limitation.*

In *Employers' Mutual*, the court held that a mandatory forum selection clause in the underlying construction contract did not apply to a surety that was not a party to the underlying contract. 2013 WL 943759, at *4. In that case, each of two construction contracts entered between Iberville Parish School Board (IPSB) and the contractor contained a mandatory forum selection clause. Employers' Mutual Casualty (EMC) issued performance and payment bonds for both projects. Those bonds, like Hanover's bond, included a provision permitting suit to be brought "in any court of competent jurisdiction in the location in which the work or part of the work is located." After the contractor defaulted and was terminated, IPSB and EMC executed a Takeover Agreement by which EMC was to complete the project. After completing the projects, EMC filed suit in federal court in Louisiana claiming IPSB had improperly withheld funds to which EMC was entitled. IPSB moved to dismiss based on a mandatory forum selection clause in the original construction contract which required suits to be filed in Louisiana state court.

The court in *Employers' Mutual* did find that the "more expansive and permissive jurisdictional terms" set forth in the bonds demonstrated the surety's intent not to be bound by the forum-selection clauses found in the underlying contracts. *Id.* at *4. However, unlike the present case, there is nothing to indicate that the bonds issued by EMC incorporated the terms of the underlying construction contracts. On the contrary, the court observed that the surety "never agreed" to be bound by the terms of the construction contract. *Id.* Moreover, while the Takeover Agreement was expressly subject to the original construction contracts, that agreement, like

the performance bond in *Jefferson Parish*, and unlike the bond here, contained restricting language making clear that the surety was not assuming obligations beyond those set forth in its bonds:

"The Obligee acknowledges that the Surety, by its execution of this Agreement, is acting in its capacity as the surety for the Former General Contractor in making arrangements for the performance and completion of the Contract, and that the Surety is not assuming any obligations or liabilities beyond those set forth in the Bond." That paragraph continues: "As to completion of the Contract, except as otherwise provided in this Agreement, the Surety is bound to all obligations of and entitled to all rights, title and interest of the Former General Contractor in and to the Contract on all respects as if the Surety were the original party to the Contract."

*Id.* The court concluded:

It is clear from the plain reading of this line that this portion of the contract refers to the completion of the work that is the subject of the underlying contract by the introductory phrase, "[a]s to the completion of the Contract, . . ." It does not clearly and unequivocally signal a waiver of EMC's removal rights.

*Id.*

■ In the case at bar, Hanover's Bond does not limit, explicitly or implicitly, the terms of the Master Agreement which were incorporated. Moreover, while the Performance Bond does include its own forum selection clause which provides that suit may be brought "in the location in which the work or part of the work is located," contrary to Hanover's suggestion, that provision is not inconsistent with the forum selection clause in the Master Agreement and does not create ambiguity. "When interpreting a contract, a court should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *In re Velazquez,* 660 F.3d 893, 898 (5th Cir.2011) (internal quotation marks and citation omitted). Here, whereas the forum selection clause in the Master Agreement requires that suit be brought "in Mississippi state court located in Warren County, Mississippi," the forum selection clause in the Bond is permissive, allowing (though not requiring) suit to be filed where the work is located. As the work is located in Warren County, the clauses are properly read as complementary and not contradictory. *See McWane, Inc. v. Lanier,* C.A. No. 9488–VCP, 2015 WL 399582, at *10 (Del.Ch. Jan. 30, 2015) (where one agreement provided that disputes relating to the agreement "may be brought in Alabama" and separate agreement provided that disputes arising out of or relating to that agreement "must be brought in Delaware", court found that "these two agreements are complementary and not conflicting," and that "the only reasonable way to interpret these clauses is that the mandatory trumps the permissive"); *Summa Humma Enters., LLC v. Fisher Eng'g,* Civil No. 12–cv–367–LM, 2013 WL 57042, at *4–5 (D.N.H. Jan. 3, 2013) (where parties were subject to two agreements, one containing a mandatory forum selection clause by which the parties agreed to submit to the exclusive jurisdiction of the courts of Maine, and the other containing a permissive forum selection clause by which they consented to personal jurisdiction in Maine, court found there was no inconsistency between the two forum-selection clauses: the latter was included within the former); *see also See Muzumdar v. Wellness Int'l Network, Ltd.,* 438 F.3d 759, 761–62 (7th Cir.2006) (holding that "non-exclusive jurisdiction" language of one provision could not undermine strongly worded mandatory forum

selection clause set forth in another provision; permissive language did not amount to forum selection, had no bearing on otherwise enforceable mandatory forum selection clause, and simply required parties to submit to personal jurisdiction of Texas courts); *cf. Ohio Farmers Ins. Co. v. Graham Constr. Servs., Inc.*, No. 4:12–cv–021, 2012 WL 4049849, at *5 (D.N.D. Sept. 13, 2012) (stating that "[w]hen there is no mandatory forum selection clause in a bond, and there is a mandatory selection clause in a subcontract, courts have held that the forum selection clause in the subcontract controls venue for purposes of suits related to the bond as well).

Based on all of the foregoing, the court concludes that the mandatory forum selection clause in the Master Agreement, to which Hanover is bound and which covers the claims asserted herein, controls venue for this litigation ·and therefore, it is ordered that KCSR's motion to remand is granted.

SO ORDERED this 24th day of July, 2015.